UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 24-3081-GW-KSx | Date | July 12, 2024 |
|---|---|---|---|
| Title | *Dana Hughes v. Vivint, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**     IN CHAMBERS - TENTATIVE RULING ON DEFENDANT VIVINT, INC.'S MOTION TO DISMISS [11]

Attached is the Court's Tentative Ruling on Defendant's Motion [11] set for hearing on July 15, 2024 at 8:30 a.m.

                                                                                                                                                                   :

Initials of Preparer    JG

***Dana Hughes v. Vivint, Inc., et al.***; Case No. 2:24-cv-03081-GW-(KSx)
Tentative Ruling on Motion to Dismiss

I.     **Background**[1]

On March 12, 2024, Plaintiff Dana Hughes ("Plaintiff" or "Hughes") brought a putative class action suit against Defendant Vivint, Inc. and Does 1-25 ("Defendant" or "Vivint") in Los Angeles County Superior Court asserting one cause of action for violation of California's Trap and Trace Law, *see* Cal. Penal Code § 638.51, under the California Invasion of Privacy Act ("CIPA").  *See generally* Complaint ("Compl."), Docket No. 1-1.  Plaintiff seeks, *inter alia*, injunctive relief, statutory damages, punitive damages, and attorneys' fees and costs.  *See id.*  Defendant removed the action to this Court on April 15, 2024, based on the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d).  *See* Docket No. 1.

Plaintiff alleges that she is a citizen of California residing in Los Angeles County.  *See* Compl. ¶ 6.  Defendant is a Utah retailer that sells home security systems.  *See id.* ¶ 10.[2]  Defendant operates the website https://www.vivint.com (the "Website").  *See id.*  Plaintiff alleges that Defendant installed on its Website software created by TikTok that is used to identify website visitors (the "TikTok Software").  *See id.*  According to Plaintiff, the TikTok Software acts via a process known as "fingerprinting" in which "the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans."  *Id.* ¶ 11.  The TikTok Software "gathers device and browser information, geographic information, referral tracking, and url tracking."  *Id.* ¶ 12.  Defendant also runs an "Advanced Matching" function of the TikTok Software that "will scan your website for recognizable form fields containing customer information, like email and phone . . . ."  *See id.* ¶¶ 13-14.  Plaintiff alleges that when a user visits the Website, the TikTok Software automatically runs and sends information to TikTok to match the user with TikTok's fingerprint of them.  *See id.* ¶ 15.  As the process is automatic, website visitors are not informed and cannot consent to the tracking of their web activity.  *See id.* ¶ 16.  Further, Defendant does not attempt to obtain consent and does not provide a way to opt out of the data collection.  *See id.*

---

[1] The facts in this section are derived from Plaintiff's Complaint, Docket No. 1-1, unless otherwise indicated.

[2] Plaintiff's Complaint asserts Defendant is a New Jersey citizen.  Defendant's notice of removal states that it is actually a Utah citizen.

1

Under California law, "'[t]rap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). Plaintiff contends the TikTok Software is a trap and trace device because "the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website." Compl. ¶ 34. CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without consent or a court order. *See id*. ¶ 22. *See also* Cal. Penal Code § 638.51. Plaintiff seeks to certify a class of "[a]ll persons within California who within the statute of limitations period whose information was sent to TikTok by the Website through the TikTok Software." Compl. ¶ 24.

Now before the Court is Defendant's motion to dismiss ("Mot."). *See* Docket No. 11. Plaintiff filed an opposition, *see* Docket No. 13, and Defendant filed a reply, *see* Docket No. 14.

## II. Legal Standard

### A. Motion to Dismiss

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to

2

judicial notice." *Swartz*, 476 F.3d at 763; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "On a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

B. <u>Standing</u>

The "irreducible constitutional minimum" of standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."). The plaintiff bears the burden of establishing these elements, and "at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 578 U.S. at 339 (cleaned up). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. (internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*. (internal quotation marks omitted). A concrete injury "must actually exist," and be "real, and not abstract." *Id*. at 340 (internal quotation marks omitted). Concrete injuries can be both tangible and intangible. *See id*. With respect to the concrete-harm

requirement, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Or put differently, "[t]hat inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. The role of Congress or legislatures in identifying intangible harms may be instructive, but violation of a statutory right does not automatically satisfy the injury-in-fact requirement because "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427.

### III. Discussion

Defendant moves to dismiss the Complaint arguing it is procedurally and substantively deficient. *See* Mot. at 1. Defendant claims that Plaintiff: (1) has not alleged concrete harm sufficient to satisfy Article III standing, (2) fails to allege facts establishing personal jurisdiction over Vivint, (3) fails to state a claim for relief under CIPA; and (4) has plead a Complaint that is impermissibly vague. *See id*. As Article III standing is a prerequisite to this Court's subject matter jurisdiction, the Court will first address the issue of Plaintiff's standing.

Defendant claims that Plaintiff cannot satisfy the concrete injury requirement of standing because she "fails to allege *any* harm – physical, economic, or otherwise – resulting from her use of the Vivint website." Mot. at 4. Rather, Plaintiff offers only conclusory allegations regarding Defendant's use of the TikTok Software, and such bald allegations of statutory violations are insufficient to confer standing. *See id*. Further, Defendant argues that Plaintiff does not identify any specific information that could implicate any harm to her privacy by the alleged conduct. *See id*. Moreover, Defendant argues that Plaintiff consented to the alleged conduct as the Website clearly displays a link to its Privacy Notice, which informs users of the use of tracking technologies, and regardless of whether Hughes read the notice, she impliedly consented. *See id*.

Plaintiff first responds with a series of procedural arguments. Plaintiff claims that she filed this case in state court, and Defendant removed it to federal court before moving to dismiss for lack of Article III standing. *See* Opp. at 4. Plaintiff argues this type of tactic is disfavored, and this case should be remanded if no standing is found. *See id*. Further, Plaintiff states that standing was never discussed at the parties' meet and confer before removal. *See id*. at 5. As to the

substance, Plaintiff contends she does have Article III standing. *See id*. Plaintiff cites to Ninth Circuit case law for the proposition that intrusions into privacy constitute an injury in fact because an individual's right to privacy encompasses control of information concerning her person, and a violation of the right falls into a category of traditionally recognized harm. *See id*. Plaintiff claims an injury from invasion of her privacy because Defendant collected Plaintiff's phone number, email, address, and routing information. *See id*. Defendant replies that Plaintiff remains silent as to any concrete harm purportedly suffered or alleged. *See* Reply at 4. Pointing to the portion of the Complaint cited by Plaintiff to demonstrate harm, Defendant contends that the paragraph only conclusively asserts Defendant employs a trap and trace process that identifies the source of incoming communications to the website. *See id*. Defendant argues that "[n]owhere in this paragraph does Plaintiff assert that she – or anyone else – was harmed by the alleged trap and trace process." *Id*.

At this time, the Court would find that Plaintiff has not sufficiently established Article III standing. The parties' dispute centers on whether Plaintiff has suffered an injury in fact that is concrete and particularized. Plaintiff's Complaint is vague as to many, if not all, of the details surrounding her use of the Website and what specific information was captured by the TikTok Software. Plaintiff does not allege any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit. As a result, Plaintiff fails to clearly allege facts establishing an injury in fact. For instance, in describing her alleged injury from invasion of privacy, Plaintiff claims that "Defendant collected Plaintiff's phone number, email address and routing information," citing to paragraph 34 of the Complaint. Opp. at 5. However, as Defendant points out, paragraph 34 of the Complaint only states:

> Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website.

Compl. ¶ 34. Such a paragraph, even accepted as true and construed in Plaintiff's favor, does not sufficiently explain what information of Plaintiff's was captured, only what information could be captured. For instance, Plaintiff claims that her email address and phone number were captured by Defendant. However, Plaintiff never alleges in her Complaint that she entered her email address or phone number into any fields on the Website so that the Advanced Matching feature of the

TikTok Software could capture her personalized information. Plaintiff's claim that such information was collected is unsupported by the facts of the Complaint. However, Plaintiff does allege that her routing information was collected. In the Complaint, Plaintiff states that the TikTok Software "gathers device and browser information, geographic information, referral tracking, and url tracking." Compl. ¶ 12. But, in claiming that only her routing information was collected by Defendant, Plaintiff does not specify what that routing information is, and whether that differs from addressing and other signaling information she does not contend was collected.

Plaintiff accurately quotes the Ninth Circuit for the proposition that "a right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (cleaned up). In that case, the Ninth Circuit goes even further to state "violations of the right to privacy have long been actionable at common law," and CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id*. (cleaned up). However, Plaintiff's argument here is belied by the vagueness of her pleading. As the right to privacy encompasses control of information concerning one's person, courts "make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (internal quotation marks omitted).

In *In re Facebook*, the Ninth Circuit found the plaintiffs had "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information" because "Facebook's tracking practices allow it to amass a great degree of personalized information," such as "an individual's likes, dislikes, interests, and habits over a significant amount of time." *In re Facebook*, 956 F.3d at 599. In contrast, other courts have found the collection of other, less personalized information to not implicate privacy concerns. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (finding collection of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" to be insufficiently concrete to confer standing as there is "an insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion"); *Lightoller v. Jetblue Airways Corp.*, No. 3:23-cv-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding "Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close

relationship to the right to control personal information" when alleging "that while visiting Defendant's website, her communications were monitored, recorded, and collected" and Defendant could "intercept and record a website visitor's electronic communications, including her mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time") (internal quotation marks omitted). Plaintiff does not sufficiently explain what routing information was collected, and whether that routing information is of such a kind that it implicates a protectable privacy interest.

As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (granting motion to dismiss because "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest. Accordingly, Plaintiff's allegation is insufficient to allege a concrete harm that is required for Article III standing"); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (granting motion to dismiss for lack of standing as "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy").

Even if Plaintiff was more specific in alleging what information of hers was collected by the TikTok Software, her arguments regarding the harm associated with her invasion of privacy would still be flawed. While Defendant claims that no harm has been asserted by Plaintiff as a result of the trap and trace process, the Court would construe Plaintiff as alleging the harm to be collection of otherwise anonymous information that is used by TikTok to identify Plaintiff through the "fingerprinting" process. *See* Comp. ¶ 11. In essence, the harm Plaintiff claims is having otherwise anonymous data be identified to her through the TikTok Software. This type of identifying-based harm would track with the section of the penal code that Plaintiff brings suit under concerning trap and trace devices. However, Plaintiff fails to allege that she has a TikTok account that would allow Defendant's collection of her anonymous information from visiting the Website to be associated with her and identify her. If Plaintiff does not have a TikTok account, then the fingerprinting process would not produce any match, meaning Plaintiff's identity would

not be connected with the anonymous information, and seemingly no harm would have occurred.

In sum, the Court would not find that Plaintiff has shown the necessary elements to establish her standing to bring suit. As Plaintiff has not established clearly alleged facts to demonstrate injury in fact, but potentially could with greater detail, the Court would dismiss this case, but with leave to amend.[3]

## IV. Conclusion

For the foregoing reasons, the Court would **GRANT** Defendant's motion to dismiss without prejudice. Further, the Court would **GRANT** Plaintiff leave to amend within three weeks of the entry of this Order.

---

[3] As the Court would not find Plaintiff has proven standing to bring this action, the Court need not decide Defendant's other arguments concerning personal jurisdiction and the merits of Plaintiff's claims. Plaintiff would be wise to keep those arguments in mind if she chooses to file an amended complaint.