1  LIAM E. FELSEN (350451)
   lfelsen@fbtlaw.com
2  FROST BROWN TODD LLP
   633 W. Fifth Street, Suite 900
3  Los Angeles, CA 90071
   Phone: (213) 629-7044
4  Fax: (213) 229-2499

5  Attorneys for Defendant
   VIVINT, INC.

6

7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | DANA HUGHES, individually and on behalf of all others similarly situated, | **CASE NO.:** 2:24-cv-03081-GW (KSx)
12 |  | (Superior Court of California, County of Los Angeles, Case No. 24STCV06156)
13 |      Plaintiffs, |
14 | v. |
15 | VIVINT, INC., a New Jersey Corporation; and DOES 1 through 25, inclusive, | **DEFENDANT VIVINT, INC.'S NOTICE OF MOTION; MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**
16 |  |
17 |      Defendant. |
18 |  | **Action Filed**: March 12, 2024
19 |  | **Action Removed**: April 15, 2024
20

21         RESERVED
22         **Hearing Date:**  October 24, 2024
           **Hearing Time:**  8:30 a.m.
23         **Courtroom:**  9D-9th Floor

24

25 **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

26         **NOTICE IS GIVEN** that on **October 24, 2024**, **at 8:30 a.m.** or as soon

27 thereafter as the matter can be heard in Courtroom **9D, 9th Floor** of the above-captioned

28 court, located at 350 West First Street, Los Angeles, CA 90012, Defendant Vivint, Inc.

*FROST BROWN TODD LLP*
LOS ANGELES

1   ("Vivint") will move to dismiss all causes of action in Plaintiff's Amended Complaint.

2          This Motion is made on grounds that the Amended Complaint remains

3   procedurally and substantively deficient and should be dismissed with prejudice.

4   Plaintiff has not – and cannot – allege concrete harm sufficient to satisfy Article III's

5   "irreducible constitutional minimum of standing," and the Amended Complaint should

6   be dismissed on this basis alone. In addition, Plaintiff has also failed to allege facts

7   sufficient to confer this Court with personal jurisdiction over Vivint and has failed to

8   state a claim for relief under the California Invasion of Privacy Act. Accordingly, the

9   Amended Complaint should be dismissed.

10          This Motion is based on this Notice of Motion, the accompanying Memorandum

11   of Points and Authorities, the [Proposed] Order filed concurrently, a separate Request

12   for Judicial Notice, the pleadings and papers on file in this action, and such further oral

13   and documentary evidence as may be presented at the hearing on this Motion.

14          This Motion is made following the conference of counsel required under L.R. 7-

15   3 which took place on Tuesday, August 27, 2024.

16

17   DATED:  September 3, 2024          FROST BROWN TODD LLP

18

19                                      By:_____

20                                          LIAM E. FELSEN
                                            Attorneys for Defendant
21                                          VIVINT. INC.

22

23

24

25

26

27

28

FROST BROWN TODD LLP
LOS ANGELES

# **TABLE OF CONTENTS**

**I.**    INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

**II.**   FACTUAL AND PROCEDURAL HISTORY ................................................ 1

**III.**  ARGUMENTS AND AUTHORITIES ............................................................ 3

    **A.**    Plaintiff lacks standing because she does not allege concrete harm. .... 4

        **1.**    The information Plaintiff alleges that Vivint and the TikTok Software collected is not personal in nature. ............................ 5

        **2.**    Plaintiff fails to allege facts sufficient to demonstrate Vivint or the TikTok Software had the ability to "fingerprint" Plaintiff or link any data it collected to Plaintiff individually.... 7

    **B.**    California does not have personal jurisdiction over Vivint. ................ 8

        **1.**    Vivint is not subject to California's general jurisdiction because Vivint is not "at home" in California. ......................... 11

        **2.**    Vivint is not subject to specific jurisdiction because the activities alleged were not directed at California, and Vivint has not purposefully availed itself to this state......................... 11

    **C.**    Plaintiff has failed to allege facts sufficient to state a claim under California's Trap and Trace Law. ....................................................... 13

        **1.**    Plaintiff's application of "trap and trace device" to the Website contradicts CIPA's compliance provisions and threatens public policy. ............................................................ 15

        **2.**    Plaintiff consented to Vivint's use of the TikTok Software..... 16

**IV.**   CONCLUSION ............................................................................................. 18

FROST BROWN TODD LLP
Los Angeles

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*Chandler v. State Farm Mut. Auto. Ins. Co.*
   598 F.3d 1115, 1122 (9th Cir. 2010) ..............................................................4

4

*Lujan v. Defenders of Wildlife*
   504 U.S. 555, 561 (1992) ..................................................................................4

5

6

*Spokeo, Inc. v. Robins*
   578 U.S. 330, 339 (2016) ..................................................................................4

7

*TransUnion LLC v. Ramirez*
   141 S.Ct. 2190, 2205 (2021) ..........................................................................4-5

8

9

*Warth v. Seldin*
   422 U.S. 490, 518 (1975) ..................................................................................4

10

*Byars v. Sterling Jewelers, Inc.*
   No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).....4-5

11

12

*I.C. v. Zynga, Inc.*
   600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) ....................................5-6

13

*Lightoller v. Jetblue Airways Corp.*
   No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023)...5-6

14

*Mikulsky v. Noom, Inc.*
   682 F. Supp.3d 855, 864 (S.D. Cal. 2023) .....................................................6

15

16

*In re Facebook, Inc. Internet Tracking Litig.*
   956 F.3d 589, 598 (9th Cir. 2020) ..................................................................6

17

18

*Moody v. C2 Educ. Sys.*
   No. 2:24-cv-04249-RGK-SK, 2024 U.S. Dist. LEXIS 132614,
   at *10 (C.D. Cal. July 25, 2024) ...................................................................6-7

19

*Massie v. General Motors, LLC*
   No. 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022)...................7-8

20

21

*Menken v. Emm*
   503 F.3d 1050, 1056 (9th Cir. 2007) ..............................................................8

22

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*
   551 F.2d 784, 787 (9th Cir. 1977) ..................................................................8

23

24

*Handsome Music, LLC v. Etoro USA LLC*
   No. LACV2008059VAPJCX, 2020 WL 8455111, at *2
   (C.D. Cal. Dec. 17, 2020). ........................................................................9, 13

25

26

*Int'l Shoe Co. v. Wash.*
   326 U.S. 310, 316 (1945) ..................................................................................9

27

*Hanson v. Denckla*
   357 U.S. 235, 253 (1958) ..................................................................................9

28

FROST BROWN TODD LLP
Los Angeles

i
**TABLE OF AUTHORITIES**

FROST BROWN TODD LLP
Los Angeles

*Walden v. Fiore*
    571 U.S. 277, 286 (2014) ...................................................................................... 9

*Burger King Corp. v. Rudzewicz*
    471 U.S. 462, 475 (1985) .................................................................................. 9-11

*Doe v. Am. Nat'l Red Cross*
    112 F.3d 1048, 1050 (9th Cir. 1997) ..................................................................... 9

*Daimler AG v. Bauman*
    571 U.S. 117, 138–39 (2014) ........................................................................... 9-11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
    564 U.S. 915, 924 (2011) ................................................................................. 9-11

*Picot v. Weston*
    780 F.3d 1206, 1211 (9th Cir. 2015) ............................................................... 10-11

*Dole Food Co. v. Watts*
    303 F.3d 1104, 1111 (9th Cir.2002) ..................................................................... 10

*Calder v. Jones*
    465 U.S. 783, 788-89 (1984) ........................................................................ 10, 12

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*
    972 F.3d 1101, 1107 (9th Cir. 2020) .................................................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*
    374 F.3d 797, 802 (9th Cir. 2004) ....................................................................... 10

*Briskin v. Shopify, Inc.*
    87 F.4th 404, 418 (9th Cir. 2023) ........................................................................ 11

*Balistreri v. Pacifica Police Dept.*
    901 F.2d 696, 699 (9th Cir. 1990) ....................................................................... 13

*Ashcroft v. Iqbal*
    556 U.S. 662, 129, S.Ct. 1937, 1949 (2009) ............................................... 13-14, 16

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544, 570 (2007) ............................................................................... 13-14

*Warren v. Fox Family Worldwide, Inc.*
    328 F.3d 1136, 1139 (9th Cir. 2003) .................................................................... 14

*Licea v. Hickory Farms LLC*
    No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) ....... 15-16

*Silver v. Stripe Inc.*
    No. 4 :20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) ... 16

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171, 1177 (9th Cir. 2014) .................................................................... 16

*Moretti v. Hertz Corp.*
    No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) .......... 16

*Javier v. Assurance IQ, LLC* (*Javier I*)
   No. 4:20-CV-02860-JSW, 2021 WL 940319, at *3-4 (N.D. Cal. Mar. 9, 2021)......16

*Smith v. Facebook, Inc.*
   745 F. App'x 8, 8-9 (9th Cir. 2018) ...........................................................................17

*Garcia v. Enter. Holdings, Inc.*
   78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015). ..........................................................17

## <u>Statutes</u>

Cal. Pen. Code § 638.50 ...........................................................................................3, 14

Cal. Pen. Code § 638.51 .........................................................................................14, 16

Cal. Pen. Code § 638.52 ...............................................................................................15

FROST BROWN TODD LLP
LOS ANGELES

**TABLE OF AUTHORITIES**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2     Defendant Vivint, Inc. ("Vivint") respectfully submits this Memorandum of

3  Points and Authorities in support of its Motion to Dismiss (the "Motion") with respect

4  to all causes of action in the Amended Complaint (the "Amended Complaint") filed by

5  Plaintiff Dana Hughes ("Plaintiff") against Vivint.

6  **I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

7     Plaintiff's attempt to amend her Complaint to cure the procedural and substantive

8  deficiencies has failed, and the Amended Complaint should be dismissed with

9  prejudice. Plaintiff has not – and cannot – allege concrete harm sufficient to satisfy

10  Article III's "irreducible constitutional minimum of standing." The Court informed

11  Plaintiff what she must plead to overcome dismissal; nonetheless, she again failed to

12  meet her burden. The Amended Complaint should be dismissed on this basis alone. In

13  addition, Plaintiff has also failed to allege facts sufficient to confer this Court with

14  jurisdiction over Vivint; and has failed to state a claim for relief under the California

15  Invasion of Privacy Act. Accordingly, the Amended Complaint should be dismissed.

16  **II.    FACTUAL AND PROCEDURAL HISTORY**

17     Vivint is a retailer that sells home security systems. (*See* Amended Complaint at

18  ¶ 10.) Vivint is incorporated, and maintains its principal place of business, in Utah.

19  Vivint operates https://www.vivint.com (the "Website") to market and sell its products.

20  (*See* Amended Complaint at ¶ 10.)

21     Plaintiff alleges that she is a California resident whose information was sent to

22  TikTok through software installed on the Website. (*See* Amended Complaint at ¶ 25.)

23  Specifically, Plaintiff claims that Vivint installed software created by TikTok on the

24  Website to identify website visitors (the "TikTok Software"). (*See* Amended Complaint

25  at ¶ 10.)

26     As asserted by Plaintiff, the TikTok Software uses "fingerprinting" to collect data

27  about an individual who visits the Website – such as the individual's browser

28  information, geographic information, referral tracking, and URL tracking – and matches

FROST BROWN TODD LLP
LOS ANGELES

1

that data with existing data to "reconstruct" the individual's identity. (*See* Amended Complaint at ¶¶ 11, 12, 17, 18.) Further, Plaintiff asserts, without factual support, that the "TikTok Software was deployed on the Website when Plaintiff visited in January 2024. Accordingly, the TikTok Software gathered her information . . .in order to identify and track her." (*See* Amended Complaint at ¶ 18.)

Notably, Plaintiff does not allege what device she used to access the Website, what activity she engaged in on the Website, where she accessed the Website, any concrete damages she incurred as a result of her interaction with the Website, or even that she has a TikTok account that would allow the alleged collection of her anonymous information from the Website to be associated with her and actually identify her.

The Website includes "Terms and Conditions" that apply to any use of Vivint's website. (*See* Vivint's Request for Judicial Admission, filed simultaneously with this Motion ("RJN"), Exhibit A.). The Website also includes a written "Privacy Notice." (*See* RJN, Exhibit B.). Any individual, including Plaintiff, who visits the Website can access both the Terms and Conditions and the Privacy Notice. Vivint's Privacy Notice communicates that "[i]n addition to collecting information directly from you, [Vivint] may receive personal information about from other individuals, from the devices you use, through data collection technologies, . . . and from other lawful sources." (*See* RJN, Exhibit B.). Further, the Privacy Notice expressly informs Website visitors that:

- Vivint "may automatically collect information or inferences about you through tracking technologies such as cookies and tools that track your usage of Vivint websites or the Vivint mobile app." (*See* RJN, Exhibit B.)

- Vivint "may disclose personal information . . . with [its] affiliates and subsidiaries, service providers who act on [its] behalf, [its] business partners, third parties pursuant to legal purposes, or to others at your discretion." (*See* RJN, Exhibit B.)

- Vivint and its "service providers and business partners automatically collect certain information about you when you use and interact with [its] websites,

FROST BROWN TODD LLP
Los Angeles

social media accounts, mobile applications, and emails . . . using tools such as cookies, web beacons, pixels, tags, embedded scripts, session replay tools, SDKs, and other tracking technologies." (*See* RJN, Exhibit B.)

In addition to Vivint's explicit disclosures, the Privacy Notice also provides clear instructions on actions individuals can take to control the information collected. (*See* RJN, Exhibit B). Plaintiff does not allege she took any of the identified opt-out actions on her Vivint account, devices, or social media accounts.

On March 12, 2024, Plaintiff filed her Complaint against Vivint.  Vivint removed the case to this Court and then filed a Motion to Dismiss.

On August 5, 2024, after oral argument, the Court granted Vivint's Motion to Dismiss and adopted the prior July 12, 2024 tentative ruling as its Final Ruling (the "Final Ruling"), which allowed Plaintiff time to amend the Complaint.  The Court, in the Final Ruling, dismissed the Complaint because Plaintiff had not alleged facts sufficient to establish Article III standing. (*See* RJN, Exhibit C.)

On August 19, 2024, Plaintiff filed her Amended Complaint. In the Amended Complaint, Plaintiff once again asserts that the TikTok Software is an illegal "trap and trace device" under § 638.50 of the California Invasion of Privacy Act ("CIPA"). (*See* Amended Complaint at ¶¶ 19-24.)   Plaintiff also alleges that Vivint has "sufficient minimum contacts in the State of California or otherwise purposefully avails itself of the California market." (*See* Amended Complaint at ¶ 3.)   However, even though Plaintiff has now added certain new allegations (mostly conclusory), Plaintiff's claims still fail, and the Court should similarly dismiss the Amended Complaint.

## III.    ARGUMENTS AND AUTHORITIES

The Amended Complaint should be dismissed for three reasons: (1) Plaintiff lacks standing because she has not alleged concrete harm; (2) Plaintiff has failed to plead facts sufficient to confer this Court with jurisdiction as to Vivint; and (3) Plaintiff fails to state a claim under CIPA, stretching the original intent of California's Trap and Trace Law beyond recognition and threatening public policy.

FROST BROWN TODD LLP
LOS ANGELES

**A.**  <u>**Plaintiff lacks standing because she does not allege concrete harm**</u>.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff does not satisfy Article III standing requirements. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Plaintiff, as the party seeking to invoke the Court's subject matter jurisdiction, has the burden of establishing that such jurisdiction exists. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To satisfy the "irreducible constitutional minimum of standing," Plaintiff must establish an injury that is "concrete and particularized, and actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan,* 504 U.S. at 560-61 (citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016). Under Article III, a concrete injury is one that "must actually exist" and be "real, and not abstract." *Id.* at 340.  In the context of statutory claims, there is no Article III standing absent "plaintiff's suffering concrete harm" as a result of "defendant's violation of" the statute. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021).  The plaintiff bears the burden of establishing these elements, and "at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." Spokeo, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

No such concrete injury exists here. Plaintiff still fails to allege *any* harm— physical, economic, or otherwise—resulting from her use of the Vivint website. Instead, Plaintiff offers only the conclusory allegation that Vivint "uses a trap and trace process on its Website by deploying the TikTok Software," and that Vivint "did not obtain consent from Plaintiff or any of the class members before using trap and trace technology." (*See* Amended Complaint at ¶¶ 35, 36.) Such bald allegations of statutory violations are insufficient to confer standing. *See, e.g., Byars v. Sterling Jewelers, Inc.,* No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (granting motion to dismiss for lack of standing because "the position that any violation of CIPA

necessarily constitutes an injury in fact without the need for an additional showing of harm" is "at odds with" *TransUnion*).

This Court's Final Ruling articulated the deficiencies in Plaintiff's Article III standing argument. Despite the opportunity to amend her pleadings to cure these deficiencies, her Amended Complaint still contains two major flaws: (1) the information she alleges Vivint disclosed is not personal in nature; and (2) she fails to allege facts sufficient to demonstrate that Vivint or the TikTok Software could "fingerprint" or link any data it collected to Plaintiff individually.

   1. **The information Plaintiff alleges that Vivint and the TikTok Software collected is not personal in nature.**

Despite the Court's clear direction in its Final Ruling, the Amended Complaint still fails to "clearly allege what personalized information of [Plaintiff's] was actually collected" and therefore Plaintiff once again "does not identify any harm to her privacy." (*See* RJN, Exhibit C at 7). In the Amended Complaint, Plaintiff simply asserts in a conclusory manner that the TikTok Software "gathered her information, including device and browser information, geographic information, referral tracing, and URL tracking in order to identify her." (*See* Amended Complaint at ¶ 18.)  Yet other than generically stating "her information," the other items are not personal in nature and Plaintiff has done nothing to describe what those items are.  It would be an improper expansion of existing case law to categorize those types of data as anything more than IP-address-type information, and certainly they cannot be categorized as personal.

California courts in cases very similar to this one have already determined that general IP address and browsing information do not contain the type of "personal information" that involves privacy concerns and that may create a concrete injury. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023); *Byars*, 2023 WL 2996686 at *3 ("Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific

personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy."); *Mikulsky v. Noom, Inc.*, 682 F. Supp.3d 855, 864 (S.D. Cal. 2023) (granting motion to dismiss because "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest. Accordingly, Plaintiff's allegation is insufficient to allege a concrete harm that is required for Article III standing").

In addition, California courts have differentiated between the privacy concerns implicated by the collection of highly personal information and more generalized contact information or browsing history that does not threaten the right to privacy. For example, Plaintiff has not alleged (nor can she) that Vivint somehow collected her "likes, dislikes, interests, and habits over a significant amount of time." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). In contrast Plaintiff has only alleged "the collection of other, less personalized information" which does "not implicate privacy concerns." *See Lightoller*, 2023 WL 3963823, at *4. In analyzing this contrast, the *Lightoller* court concluded that software or code that can "intercept and record a website visitor's . . . 'mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time'" does not amount to the collection of "personal information" sufficient to establish an injury-in-fact. *Lightoller*, 2023 WL 3963823, at *4. Even the disclosure of "basic contact information, including one's email address, phone number, or . . . username" are inadequate to establish Article III standing based on the "insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion." *Zynga, Inc.*, 600 F. Supp. 3d at 1049–50.

In an attempt to sidestep the foregoing analysis, the Amended Complaint now cites *Moody v. C2 Educ. Sys.*, No. 2:24-cv-04249-RGK-SK, 2024 U.S. Dist. LEXIS 132614, at *10 (C.D. Cal. July 25, 2024), in support of her allegation that invasion of

FROST BROWN TODD LLP
Los Angeles

**MEMORANDUM OF POINTS AND AUTHORITIES**

Case 2:24-cv-03081-GW-KS    Document 27    Filed 09/03/24    Page 13 of 25    Page ID
#:275

FROST BROWN TODD LLP
Los Angeles

privacy is an actionable injury. (*See* Amended Complaint at ¶ 18.) However, the defendant in *Moody* never raised Article III standing, and the *Moody* Court never discussed it; *Moody* simply does not apply to this case.  Indeed, the *Moody* Court even specifically cited to other cases where "courts found that the plaintiffs lacked injuries necessary for . . . Article III standing" but that Court did not apply the Article III legal standard, only the standard as related to Cal. Penal Code §§ 638.51 and 637.2.

The Court, in its prior Final Ruling, clearly stated that Plaintiff must "sufficiently explain what routing information was collected, and whether that routing information is of such a kind that it implicates a protectable privacy interest." (*See* RJN, Exhibit C at 7). Now, Plaintiff's second failure to appropriately plead personalized injury demonstrates not only a deficiency as to her pleadings, but also a deficiency as to the facts underlying her claim. Plaintiff's Amended Complaint fails to allege that Vivint or the TikTok Software collected information from her that is personal in nature.

### 2.   <u>Plaintiff fails to allege facts sufficient to demonstrate Vivint or the TikTok Software had the ability to "fingerprint" Plaintiff or link any data it collected to Plaintiff individually</u>.

The Court previously noted in the Final Ruling that any allegations by Plaintiff would "still be flawed" unless Plaintiff alleged that she has a TikTok account, holding that "[i]f Plaintiff does not have a TikTok account, then the fingerprinting process would not produce any match, meaning Plaintiff's identity would not be connected with the anonymous information, and seemingly no harm would have occurred." (*See* RJN, Exhibit C at 7-8). Despite the clear direction available from the Final Ruling, Plaintiff again fails to allege that Vivint or the TikTok Software *actually* "fingerprinted" her or identified her in a way that connected her identity with any otherwise anonymous information collected by the TikTok Software. *See Massie v. General Motors, LLC,* No. 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) (holding that dismissal for lack of standing is appropriate where the plaintiff fails to explain how the

1   defendant's possession of anonymized, non-personal data regarding the plaintiff's

2   browsing activities harmed her privacy interests.").

3       In the Amended Complaint, Plaintiff offers only the conclusory allegation that

4   "the TikTok Software gathered her information . . . *in order to* identify her." (*See*

5   Amended Complaint, ¶ 18.) Plaintiff does *not* allege that (1) she has a TikTok account

6   which would contain her personal information; (2) the TikTok Software *actually*

7   identified her; (3) the TikTok Software could use information from other websites to

8   link back and identify her; (4) any other websites that she visited which also contain the

9   TikTok Software; (5) any other websites or accounts into which she submitted personal

10  information that could have collected; or (6) that she inputted *any* personal information

11  on the Website that would allow anonymous information collected from her visit to the

12  Website to be associated back to her.

13      Instead, Plaintiff simply alleges that the TikTok Software collects the information

14  "in order to identify her," regardless of whether it actually identifies her.  (*See* Amended

15  Complaint, ¶ 18.)  Without any allegation that Vivint or the TikTok Software linked

16  Plaintiff's anonymized, non-personal data back to her identity, Plaintiff again fails to

17  demonstrate that Vivint could have "fingerprinted" her, no harm could have occurred,

18  and the Court should dismiss the Amended Complaint.

19      **B.** **California does not have personal jurisdiction over Vivint**.

20      Plaintiff has failed to allege facts sufficient to establish that this Court has

21  personal jurisdiction over Vivint, and Plaintiff's claim should be dismissed under Rule

22  12(b)(2). Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden

23  of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*,

24  503 F.3d 1050, 1056 (9th Cir. 2007). Although uncontroverted allegations in the

25  complaint must be taken as true, the plaintiff cannot "simply rest on the bare allegation

26  of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.

27  1977).

28  //

FROST BROWN TODD LLP
Los Angeles

When determining whether it can exercise jurisdiction over a nonresident defendant, a district court must determine whether asserting jurisdiction would offend the principles of Fifth Amendment due process or conflict with the state's long-arm statute. *Handsome Music, LLC v. Etoro USA LLC*, No. LACV2008059VAPJCX, 2020 WL 8455111, at *2 (C.D. Cal. Dec. 17, 2020).

Due process requires that nonresident defendants have certain "minimum contacts" with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Here, there is no general jurisdiction over Vivint in this state because Vivint is not considered "at home" in California. Moreover, specific jurisdiction is also lacking because the exercise of personal jurisdiction over Vivint is improper under both the purposeful availment test and the purposeful direction test.

A court may exercise personal jurisdiction over a nonresident defendant generally or specifically. *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). For general jurisdiction to exist over a foreign corporation, its affiliations with the state must be so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). The place of incorporation and principal place of business are "paradig[m]" bases for general jurisdiction. *Id.*

//

FROST BROWN TODD LLP
Los Angeles

Courts employ a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

Under the first prong, courts apply either a "purposeful direction" or "purposeful availment test." Under the purposeful availment analysis, the defendant's contacts at issue must create a "substantial connection" with the forum state such that the defendant can be said to have manifestly "availed himself of the privilege of conducting business there." *Burger King Corp.*, 471 U.S. at 475-76. The purposeful direction test asks whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum, and (3) caused harm that the defendant knew to be likely suffered in the forum. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)). The Ninth Circuit has explained "[a]t bottom, both purposeful availment and purposeful direction ask whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction' solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.*; *see also Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (*quoting Burger King Corp.*, 471 U.S. at 474-75). Typically, courts apply the purposeful direction test to claims arising out of tort and the purposeful availment test to those arising out of contract. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

//

//

FROST BROWN TODD LLP
Los Angeles

FROST BROWN TODD LLP
Los Angeles

**1. Vivint is not subject to California's general jurisdiction because Vivint is not "at home" in California.**

Plaintiff has not, and cannot, show that Vivint is subject to the general jurisdiction of California courts because Plaintiff has not alleged, and cannot allege, facts sufficient to establish that Vivint has such "continuous and systematic" contacts with California as to render Vivint at home in this state. *Daimler*, 571 U.S. at 138–39 (citing *Goodyear*, 564 U.S. 924). Plaintiff appears to concede that California lacks general jurisdiction over Vivint, because she does not assert a single allegation to establish general jurisdiction. Plaintiff alleges that Vivint is "a New Jersey corporation with its principal place of business in Princeton, New Jersey." (*See* Amended Complaint at ¶ 7.) The place of incorporation and principal place of business are "paradig[m]" bases for general jurisdiction. *Daimler*, 571 U.S. at 138–39 (*citing Goodyear*, 564 U.S. at 924). Because Vivint does not have such "continuous and systematic" contacts with California as to be considered "at home," Vivint is not subject to this Court's general jurisdiction.

**2. Vivint is not subject to specific jurisdiction because the activities alleged were not directed at California, and Vivint has not purposefully availed itself to this state.**

The exercise of specific jurisdiction over Vivint is likewise improper under both the purposeful direction test and purposeful availment test.  Under both analyses, Plaintiff has failed to show that Vivint voluntarily derived some benefit from the activities in California that are the subject of Plaintiff's claim against Vivint.

The Ninth Circuit has held that exercise of specific jurisdiction over web-based platforms is not appropriate where the platforms do not have a forum-specific focus. *See Briskin v. Shopify, Inc.*, 87 F.4th 404, 418 (9th Cir. 2023). "When a company operates a nationally available e-commerce payment platform and is indifferent to the location of end-users, the extraction and retention of consumer data, without more, does not subject the defendant to specific jurisdiction in the forum where the online purchase was made." *Id.* at 409.

**MEMORANDUM OF POINTS AND AUTHORITIES**

First, Vivint is not subject to specific jurisdiction under the purposeful availment test because Plaintiff has failed to show that Vivint performed affirmative conduct to create a substantial connection with California. Under the purposeful availment test for specific jurisdiction, Plaintiff must establish actions that create a "substantial connection" with the forum state. *Picot*, 780 F.3d at 1212 (quoting *Burger King*, 471 U.S. at 475.) Merely "random, fortuitous, or attenuated" contacts are not sufficient. *Id.* (internal quotation marks omitted). A defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.*

Plaintiff has failed to show that Vivint performed affirmative conduct specific to California. Rather, Plaintiff asserts generic, conclusory statements in an attempt to persuade the Court that personal jurisdiction is appropriate. (*See* Amended Complaint at ¶ 3.) Plaintiff's conclusory allegations that Vivint "purposefully directed its activities to the Central District of California," "purposefully avails itself of the California market" and "[e]xercising jurisdiction over [Vivint] would be consistent with traditional notions of fair play and substantial justice" cannot, alone, establish jurisdiction. (*See* Amended Complaint at ¶¶ 3, 5.) Further, Plaintiff's Amended Complaint alleges that Vivint uses the TikTok Software on the Website to "captur[e] incoming electronic impulses and identifying dials, routing, addressing, and signaling information generated" by visitors to the Website. (*See* Amended Complaint at ¶ 20.)

Yet, nowhere in the Amended Complaint does Plaintiff assert any facts demonstrating that the Website or TikTok Software sought to appeal to the California audience in particular, prioritized California consumers, or acted in any way to focus on California. And Plaintiff merely stating that Vivint "develop[ed] a data collection process directed to citizens on *(sic)* this state" does not make it so. Plaintiff's failure to assert more than a conclusory statement in support of purposeful availment is fatal to her claim. Because Plaintiff has failed to show more than attenuated contact between Vivint and California, Plaintiff has failed to demonstrate with reasonable particularity

FROST BROWN TODD LLP
LOS ANGELES

sufficient contacts to subject Vivint to specific personal jurisdiction under the purposeful availment analysis.

Second, Plaintiff's allegations fail under the purposeful direction test, sometimes called the "*Calder* test." Under the purposeful direction test, the plaintiff must show that defendant (1) committed an intentional act, (2) expressly aimed at the forum, and (3) caused harm that the defendant knew to be likely suffered in the forum. *Handsome Music, LLC*, 2020 WL 8455111, at *6.

The Amended Complaint fails to show jurisdiction under the purposeful direction test because Plaintiff has failed to demonstrate that Vivint's use of the TikTok Software was "aimed" at or "intentionally targeted" toward California. Like the purposeful availment test, Plaintiff's Amended Complaint fails to allege any fact supporting that Vivint directed its use of the TikTok Software toward California. Even if Plaintiff could show that Vivint targeted its use of the technology toward California, which it did not, Plaintiff nonetheless has failed to demonstrate that it knew that Plaintiff would suffer the brunt of the harm allegedly caused by the use of this technology in California. Although Plaintiff alleges Vivint took information from her "while she was in California," she never alleges that she accessed the website while physically located in California or that she suffered any cognizable harm. (*See* Amended Complaint at ¶ 5.) Because Plaintiff has not met the requirements of the purposeful direction test, the exercise of specific jurisdiction over Vivint is improper.

Neither the purposeful availment nor purposeful direction test confer specific jurisdiction over Vivint in this case, and the Amended Complaint should therefore be dismissed under Rule 12(b)(2).

**C.** **Plaintiff has failed to allege facts sufficient to state a claim under California's Trap and Trace Law**.

Dismissal under Rule 12(b)(6) is proper where there is either "a lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). A

FROST BROWN TODD LLP
Los Angeles

13

1  sufficient complaint "demands more than an unadorned, the-defendant-unlawfully-

2  harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129, S.Ct. 1937, 1949 (2009)

3  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must

4  provide "more than labels and conclusions, and a formulaic recitation of the elements

5  of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements

6  of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*,

7  129 S. Ct. at 1949. The court need not "assume the truth of legal conclusions merely

8  because they are cast in the form of factual allegations." *Warren v. Fox Family*

9  *Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

10  Plaintiff brings a single claim under CIPA related to use of a pen register or trap

11  and trace device (the "Trap and Trace Law"). *See* Cal. Penal Code § 638.51. California

12  Penal Code Section 638.51 prohibits the installation or use of "a pen register or a trap

13  and trace device without first obtaining a court order" or "consent of the user of that

14  service has been obtained." Cal. Penal Code § 638.51(a), (b)(5).

15  CIPA defines a "pen register" as "a device or process that records or decodes

16  dialing, routing, addressing, or signaling information transmitted by an instrument or

17  facility from which a wire or electronic communication is transmitted, but not the

18  contents of a communication." Cal. Penal Code § 638.50(b). A "trap and trace" device

19  has a similar definition, describing a device or process that "captures the incoming

20  electronic or other impulses that identify the originating number or other dialing,

21  routing, addressing, or signaling information reasonably likely to identify the source of

22  a wire or electronic communication, but not the contents of a communication." Cal.

23  Penal Code § 638.50(c).

24  Historically, "pen registers" and "trap and trace" devices were tools used to

25  capture data related to telephone calls. A pen register records outgoing phone numbers,

26  while a trap and trace device records incoming phone numbers. Plaintiff now seeks to

27  stretch the original intent of this provision beyond recognition.

28  //

**1. Plaintiff's application of "trap and trace device" to the Website contradicts CIPA's compliance provisions and threatens public policy.**

Plaintiff's attempt to squeeze the use of the TikTok Software into the definition of "trap and trace device" both conflicts with CIPA's compliance provisions and threatens to create absurd public policy outcomes.

CIPA limits the use of pen register and trap and trace devices to specific law enforcement purposes and requires that an order approving their use specify "the identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached" and the identity "of the person who is the subject of the criminal investigation." Cal. Penal Code § 638.52(d)(1)-(3). These compliance provisions, incorporated into the Trap and Trace Law by reference, demonstrate that the law refers specifically to telephonic communications, and not to internet connected devices.

Plaintiff alleges that the TikTok Software is "a process to identify the source of electronic communications," mirroring the language of the statute. (*See* Amended Complaint at ¶ 20.) Yet, simply reasserting the statute's language is insufficient to apply the statute. The legislature, in Section 638.52, contemplated the connection to a particular person or telephone line in its drafting of the Trap and Trace Law. Unlike a traditional telephone or telephone line, https://www.vivint.com is a consumer-facing website with, as Plaintiff has alleged it, user-agnostic software. The "trap and trace device" as alleged by Plaintiff cannot be traced to a specific individual or phone line, as contemplated in Section 638.52. Plaintiff's theory warps the text and meaning of the Trap and Trace Law far beyond its intended use and creates absurdities in the compliance section of the statute.

Further, at least one California court has noted the negative public policy implications of allowing this skewed interpretation of the Trap and Trace Law. It remarked, "public policy strongly disputes Plaintiff's potential interpretation of privacy

MEMORANDUM OF POINTS AND AUTHORITIES

FROST BROWN TODD LLP
Los Angeles

laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator." *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024). The court went on to say that "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce" and raises concerns about creating liability without any preexisting relationship between the parties beyond internet host and internet user. *Id.*

This Court should likewise decline to expand the scope of the Trap and Trace Law to tangential internet relationships that were not contemplated at the time of the law's passage.

## 2. <u>Plaintiff consented to Vivint's use of the TikTok Software.</u>

The exact conduct of which Plaintiff complains was explicitly disclosed to her in Vivint's Privacy Policy. (*See* RJN, Exhibit B.)  Her consent defeats her claim. *See* Cal. Penal Code § 638.51(b)(5) (creating an exception to liability when a user consents).

The question of consent boils down to whether Plaintiff was put on notice of the alleged conduct. That answer is yes. Indeed, courts within this district "consistently hold that terms of service and privacy policies . . . can establish consent to the alleged conduct challenged under various states wiretapping statutes and related claims" at the motion to dismiss stage. *Silver v. Stripe Inc.,* No. 4 :20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (collecting cases under similar CIPA claims). Plaintiff's threadbare allegations of lack of consent (*See* Amended Complaint at ¶¶ 16, 22, 24, 36) are not entitled to any weight. *See, e.g., Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiff's consent to the Privacy Policy during her browsing on the Vivint website constitutes agreement to the use of website enhancement technology, including the TikTok Software. A contract entered on the internet is enforceable if it puts a website user on actual or inquiry notice of the site's terms. *Nguyen v. Barnes & Noble*

FROST BROWN TODD LLP
Los Angeles

*Inc.,* 763 F.3d 1171, 1177 (9th Cir. 2014). It is enough that "a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink"; if that exists, the plaintiff has agreed to "[a] binding contract." *Moretti v. Hertz Corp.,* No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014); *Javier v. Assurance IQ, LLC* (*Javier I),* No. 4:20-CV-02860-JSW, 2021 WL 940319, at *3-4 (N.D. Cal. Mar. 9, 2021).

The express disclosures throughout the Privacy Policy are more than adequate to put a reasonable person on notice that Vivint uses website enhancement technology like the TikTok Software; that the record data collected from this technology may be shared with third parties; and that the technology is used to promote site functionality and for marketing. (*See* RJN, Exhibit B.)  Accordingly, Plaintiff's claims must be dismissed. *See, e.g., Smith v. Facebook, Inc.,* 745 F. App'x 8, 8-9 (9th Cir. 2018) (dismissing a similar CIPA claim associated with website enhancement technology where "[a] reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes"); *Garcia v. Enter. Holdings, Inc.,* 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (taking judicial notice of "documents proffered by Defendants establish[ing] that in order to sign up for and use [the application], a user must agree to the [terms] and Privacy Policy" and dismissing CIPA claims despite plaintiff's conclusory allegation of lack of consent).

Plaintiff cannot maintain a Trap and Trace Law claim against Vivint where the law creates an explicit exception for consent, and Plaintiff was on notice as to the use of technology like the TikTok Software.

//

//

//

//

//

**MEMORANDUM OF POINTS AND AUTHORITIES**

FROST BROWN TODD LLP
LOS ANGELES

1  **IV.    CONCLUSION**

2         For the reasons stated above, Vivint respectfully requests that this Court grant its

3  Motion and dismiss, with prejudice, all allegations in the Amended Complaint.

4

5   DATED:  September 3, 2024                    FROST BROWN TODD LLP

6

7                                                          By:_____

8                                                               LIAM E. FELSEN
                                                              Attorneys for Defendant
9                                                             VIVINT, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**CERTIFICATE OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is Frost Brown Todd LLP, 633 W. Fifth Street, Suite 900, Los Angeles, CA 90071.

On September 3, 2024, I served the following document(s) on the interested parties in this action: **DEFENDANT VIVINT'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

☐     by placing the original and/or a true copy enclosed in (a) sealed envelope(s), addressed as follows:

| | |
|---|---|
| Robert Tauler<br>TAULER SMITH LLP<br>626 Wilshire Boulevard, Suite 550<br>Los Angeles, CA 90017 | Attorney for Plaintiff:<br>Dana Hughes<br><br>Phone: (213) 927-9270<br>Email: robert@taulersmith.com |

☒     **BY CM/ECF SYSTEM:** Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

☐     **BY REGULAR MAIL:** I placed such envelope with postage fully paid in the United States mail at Los Angeles, California. I am "readily familiar" with this firm's practice of collecting and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐     **BY ELECTRONIC SERVICE:** I caused the document(s) to be sent to the persons at the electronic notification address listed in the Service List.

☒     (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 3, 2024, at Los Angeles, California.

/s/   *Julia Evans*

Julia Evans

0145544.0782478   4876-7572-2972v3