LIAM E. FELSEN (350451)
lfelsen@fbtlaw.com
FROST BROWN TODD LLP
633 W. Fifth Street, Suite 900
Los Angeles, CA 90071
Phone: (213) 629-7044
Fax: (213) 229-2499

Attorneys for Defendant
VIVINT, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANA HUGHES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIVINT, INC., a New Jersey Corporation; and DOES 1 through 25, inclusive,<br><br>Defendant. | **CASE NO.:** 2:24-cv-03081-GW (KSx)<br><br>(Superior Court of California, County of Los Angeles, Case No. 24STCV06156)<br><br>**DEFENDANT VIVINT, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>**Action Filed**: March 12, 2024<br>**Action Removed**: April 15, 2024<br><br>**Hearing Date:** October 24, 2024<br>**Hearing Time**: 8:30 a.m.<br>**Courtroom:** 9D – 9th Floor |

**TO THE HONORABLE COURT AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendant Vivint, Inc. ("Vivint"), by counsel, respectfully requests in connection with its Motion to Dismiss Amended Complaint that the Court take judicial notice, pursuant to California *Evidence Code* § 452(d), of the following documents attached:

- **Exhibit A** – The "Terms and Conditions" that apply to any use of https://www.vivint.com, the website that Vivint uses to market and sell its products (the "Website"), specifically referred to in the Complaint.
- **Exhibit B –** The "Privacy Notice" that applies to any use of the Website, accessible to any visitor to the Website.
- **Exhibit C –** The Court's August 5, 2024 Final Ruling, adopting its prior July 12, 2024 tentative ruling, granting Vivint's prior Motion to Dismiss the original Complaint.

In this case, the entire Complaint centers on Plaintiff's alleged use of the Website, the assertion that the Website violated Plaintiff's privacy, and (albeit threadbare) allegations of lack of consent. (*See* Complaint at ¶¶ 16, 21, 23, 35.). The Court may therefore take judicial notice of these documents under the "incorporation by reference" doctrine which permits judicial notice of documents—such as these portions of Vivint's website—whose contents are alleged and central, but not physically attached, to the Complaint. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("Therefore, we take into account the web pages attached to ESPN's motion to dismiss under the 'incorporation by reference' doctrine").

Indeed, this Court has previously considered—and granted—similar claims and a similar request to take judicial notice of website screenshots and a privacy notice, where the plaintiff's allegations center on similar documents and privacy issues related to the use of such website. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1079 (C.D. Cal. 2021) ("The Court additionally GRANTS the RJN with respect to the

FROST BROWN TODD LLP
LOS ANGELES

Lululemon Privacy Policy and the Lululemon Website Screenshot because the Amended Complaint also discusses those documents extensively.”).

For these reasons, Vivint requests that the Court take judicial notice of the attached Exhibits A, B, and C in conjunction with Vivint’s Motion to Dismiss Amended Complaint.

DATED: September 3, 2024

FROST BROWN TODD LLP

By: ______________________________
LIAM E. FELSEN
Attorneys for Defendant
VIVINT, INC.

# EXHIBIT A

# Legal Terms and Conditions

IMPORTANT NOTICE: THESE LEGAL TERMS AND CONDITIONS ARE SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW.

**These Legal Terms and Conditions (the "Terms") apply to the advertising, marketing and/or sale of Vivint, Inc.'s ("Vivint") products and services, including through http://www.vivint.com (http://www.vivint.com), https://shop.vivint.com (https://shop.vivint.com), https://buy.vivint.com (https://buy.vivint.com), and any subdomains hosted thereunder (collectively, the "Websites"). These Terms are subject to change by Vivint without prior written notice at any time, in our sole discretion.**

## Pricing

Purchase of a Vivint system requires minimum $29.99/month services agreement in conjunction with minimum $599.99 equipment purchase. Prices, discounts and promotions are subject to change without notice. $199 installation fee applies. Monthly $1.48 cellular network maintenance fee applies. DIY system purchases and reactivations of previously-installed systems may not be eligible for certain offers.

## Third-Party Financing Options Available

Equipment may be financed subject to a separate agreement with one of Vivint's third-party financing partners. Well-qualified customers may finance equipment purchase at 0% APR for up to 60 months. Financing eligibility and terms subject to credit approval by the applicable financing partner. Additional equipment may be purchased and financed. Financing options require monthly services agreement

coterminous with third-party equipment financing agreement (for example $29.99/month for 60 months = total services cost $1,799.40). Month-to-month service agreement available when equipment is purchased upfront.

## Vivint Systems & Services

System supports up to twelve cameras subject to sufficient WiFi speeds. Without a Vivint services plan, product and system functionality is limited (including loss of connectivity via the Vivint Smart Home app). Speak to a Vivint representative at 866-719-8399 (tel:+18667198399) for complete equipment, services, and package details, including pricing and financing details. Offers may not be available in all states or provinces. Taxes and local permit fees may apply. New Vivint customers only.

## Vivint Licenses

Products and services in Louisiana provided by Vivint Louisiana Commercial Certificate #58280. See Vivint license numbers here (https://www.vivint.com/legal/licenses).

## Governing Law

All matters arising out of or related to these Terms shall be governed by the laws of the State of Utah without giving effect to any choice or conflict of law provision or rule (whether of the State of Utah or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than those of the State of Utah.

## Vivint Referral Program Terms and Conditions

These terms and conditions apply to the Vivint Referral Program ("Program") from Vivint. By referring a customer ("Referring Customer"), being referred and activating service ("Referred Customer"), or otherwise participating under the Program, the Referring Customer and Referred Customer, agree to these terms.

Rewards:

844.229.5938 (tel:+18442295938)

Under the Program, eligible Referring Customers and Referred Customers satisfying all Program eligibility criteria shall each receive a reward ("Reward"). The type and amount of the Reward shall be determined by Vivint and is subject to change at Vivint's sole discretion. Effective March 15, 2014, the Reward under the Program is a $50 account credit for both the referring customer and referred customer.

<u>Eligibility:</u>

Rewards for Referring Customers only are available to Vivint Home automation and security customers located in serviceable areas with accounts in good standing, for the activation of new home automation or security services in the home of a Referred Customer and any required right of rescission period has expired. Services are subject to change by Vivint.

<u>Reward Requirements:</u>

In order for the Referring Customer and Referred Customer to receive a Reward, the Referring Customer must refer another qualified individual for the Service and the referred customer must:

- Referred customer must sign up for any Vivint package at minimum $50.99/month for 48 or 60 (48 months in CA and WI). Activation fees vary by package. Satisfactory credit history and home ownership required. Sales tax and local permit fees may apply. Services not available in all areas. All services in Louisiana performed by Vivint Louisiana License # F1819. See Vivint license numbers here.
- Not have been a Vivint Home Service customer within 120 days of the date of referral;
- Activate Service under Vivint's standard customer agreement within the promotion period of the referral; and
- Any applicable Right of Rescission period has expired.

<u>Limits & Expiration:</u>

844.229.5938 (tel:+18442295938)

The total value of rewards per customer is unlimited. Various Rewards may be offered from time to time at the sole discretion of the Vivint. Offer not transferable or redeemable for cash and is good for account credit only.

Referral Message Limits:

Referring Customers are welcomed to send unlimited social media and email messages, but shall be limited in the number of texts messages sent to 50. Any Referring Customers found to be sending mass texts or texts to individuals with whom he/she has no personal relationship will be disqualified from the Program and will not receive any Rewards.

Privacy and Information:

By participating in the Program the Referring Customer and Referred Customer agree that Vivint may provide their information (such as first and last name and installation date) to the Referring Customer, Referred Customer, and others, including third party providers for purposes of administration of the Program.

General Provisions:

If multiple referrals for the same person are received only one Reward, subject to these terms, will be provided for the referral first received by Vivint, as determined by Vivint.

Rewards may not be combined with other offers or promotions.

This offer is intended for Vivint customers to refer their friends and family to Vivint as new customers, and should not be generally advertised or marketed in any commercial manner. Commercial accounts/customers not eligible for the Program.

Program participation is limited to Vivint residential customers with accounts in good standing. Property owners, sales agents, managers, leasing/rental agents, and landlords, or their respective agents, employees or contractors, of apartments, townhouses, condominiums or other types of multiple dwelling units are not eligible to participate in the Program or receive any Rewards, discounts or other promotional offers under the Program or for referring a customer who rents, purchases or otherwise obtains a unit owned, managed, leased and/or maintained by such person.

Vivint reserves the right to change Rewards and eligibility criteria under the Program, and to alter, modify, suspend or terminate the Program at any time upon notice, which notice may be provided through the Site, mail, e-mail or such other methods as determined by Vivint in its sole discretion. Terms subject to change.

FTC 16 CFR Part 255 Compliance:

Program participants must comply with the Federal Trade Commission's 16 CFR Part 255 "Guides Concerning the Use of Endorsements and Testimonials in Advertising". Accordingly, if you make any post on any social network (such as Facebook, Twitter, Instagram, Pinterest, or LinkedIn) as a part of this Program, you must include, and not delete, any disclosure that the Program website automatically creates for the post you are making. In the event that no such disclosure is automatically generated for your social network, you must, at a minimum include either "This is a paid endorsement" or "#paidad" in any social network posts you make as a part of this program. You are responsible for ensuring that your posts on any social network comply with the terms of use of the site, and any other applicable laws, statutes, and regulations.

## Standard Limited Warranty

Your purchase of a smart home system (the "System") with professional installation from Vivint comes with a Limited Warranty that applies to each Vivint-installed component of your system. Please review your customer agreement with Vivint for full Limited Warranty terms and conditions. The following is a brief summary of key terms for your convenience only:

Your Limited Warranty covers defects in the materials and workmanship of each component that makes up your System during the Warranty Period, which lasts for one hundred and twenty (120) days after we complete the installation. During the Warranty Period, we will repair or replace any defective part of the System that requires on-site professional installation without charge to you. Before Vivint sends on-site repair services to your residence, you must first contact Vivint customer service at (800) 216-5232 (tel:+18002165232) to attempt to resolve your needs over the phone. During the Warranty Period, we will also replace defective System components that do not require professional installation, such as door and window sensors, at no charge to you except the cost of standard shipping to your address for self-installation. We can fulfill our obligations under the Limited Warranty using new parts or used parts of the same functionality, and keep all replaced parts. After the

Warranty period expires, you will be responsible for a visit charge at our then-prevailing rate for service, plus any applicable taxes. The Limited Warranty excludes coverage for damages to equipment resulting from normal wear-and-tear, abuse, neglect, and acts of God. Certain other terms and restrictions apply. See your customer agreement for complete details regarding the Service Plan.

## SMS Terms and Conditions

Vivint may contact its customers in a variety of ways including sending SMS notifications to the number they provide. Message and data rates may apply.

You may receive an SMS message with one of the following phone numbers listed below. For best customer service, please use the phone number provided in your SMS message.

**Account Maintenance:**

855.634.4266 (tel:+18556344266)

**Installation Appointments:**

855.737.3595 (tel:+18557373595)

855.273.8527 (tel:+18552738527)

**Service Appointments:**

855.881.3392 (tel:+18558813392)

877.873.9879 (tel:+18778739879)

800.318.1970 (tel:+18003181970)

**Technical Support:**

855.272.5029 (tel:+18552725029)

**Vivint FlexPay Alerts**

By providing a mobile phone number and verbally consenting to receive messages from Vivint, you will be enrolled to receive Vivint FlexPay Alerts messages. Subscribers will receive two (2) text messages per attempt to qualify for financing. Reply **STOP** to stop receiving messages, and **HELP** for help. Message and data rates may apply.

**HELP Information**

For more info, text HELP for help related to Vivint's Vivint FlexPay Alerts program, or call 800-216-5232 (tel:+18002165232) or contact customersupport@vivint.com (customersupport@vivint.com) to communicate with a customer service representative.

**Carriers Supported**

Vivint text message alerts are compatible with a variety of mobile carriers including but not limited to, Alltel, AT&T, Boost. Cricket Wireless, MetroPCS , Sprint, T-Mobile, Verizon Wireless, Virgin Mobile, and U.S. Cellular. Other regional and smaller carriers are also supported. To participate, the recipient's phone needs to be text messaging-enabled. Vivint strives to ensure that everyone can participate, but depending on your carrier, plan, and phone, Vivint cannot guarantee it will work for you. Neither Vivint nor any mobile carrier will be liable for delayed or undelivered messages.

## Privacy Policy

**Vivint respects your right to privacy. You can view our privacy policy here (https://www.vivint.com/legal/privacy-policy).**

## Arbitration and Class Action Waiver

PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT.

By agreeing to these Terms, you agree to resolve any and all disputes with Vivint as follows:

Binding Arbitration: All claims or disputes arising out of or relating to these Terms (including the Terms' or Privacy Policy's formation, performance, and breach), the parties' relationship with each other, and/or your use of our Website(s) shall be finally

settled by binding arbitration administered by JAMS in accordance with the JAMS Streamlined Arbitration Procedure Rules for claims that do not exceed $250,000 and the JAMS Comprehensive Arbitration Rules and Procedures for claims exceeding $250,000 in effect at the time the arbitration is initiated, excluding any rules or procedures governing or permitting class actions. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award shall be written and shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction. To start an arbitration, you must do the following: (a) write a Demand for Arbitration that includes a description of the claim and the amount of damages you seek to recover (you may find a copy of a Demand for Arbitration at **www.jamsadr.com (www.jamsadr.com)**); (b) send three copies of the Demand for Arbitration, plus the appropriate filing fee, to JAMS, 620 Eighth Ave. NY Times Building 34th Floor New York, NY 10018 USA; and (c) send one copy of the Demand for Arbitration to Vivint at Vivint, Inc., 4931 N. 300 W., Provo, UT 84604, Attention: Legal Department.

*Class Action Waiver*: you and Vivint (collectively, the "parties") agree that the resolution of any disputes between the parties shall be conducted in their individual capacities only and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis. YOU AND VIVINT AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING, COLLECTIVE ACTION, PRIVATE ATTORNEY-GENERAL ACTION, OR IN ANY PROCEEDING IN WHICH YOU OR VIVINT ACTS OR PROPOSES TO ACT IN A REPRESENTATIVE CAPACITY. YOU AND VIVINT FURTHER AGREE THAT NO ARBITRATION OR PROCEEDING WILL BE JOINED, CONSOLIDATED, OR COMBINED WITH ANOTHER ARBITRATION OR PROCEEDING WITHOUT THE PRIOR WRITTEN CONSENT OF YOU, VIVINT, AND ALL PARTIES TO ANY SUCH ARBITRATION OR PROCEEEDING.

## Additional Terms

If you have existing security equipment in your home, such equipment may or may not be compatible with Vivint's equipment and may be incorporated into the new Vivint system in some instances. Because system configurations may vary widely, for a completely customized price quote contact a Vivint representative at **866-719-8399 (tel:+18667198399)**.

844.229.5938 (tel:+18442295938)

(/)

Customer Support (https://support.vivint.com/s/)

Licenses (https://www.vivint.com/legal/licenses)

Privacy Policy (https://www.vivint.com/legal/privacy-policy)

Terms of Service (https://www.vivint.com/legal/terms-of-use)

Copyright © 2024 Vivint, Inc. All rights reserved.

Do not sell or share my personal information. (https://www.requesteasy.com/6387-1256) Limit the use of my sensitive personal information. (https://www.requesteasy.com/6387-1256)

# EXHIBIT B

# Vivint Privacy Notice

Last Updated: April 2024

*Note: If you are a California resident, please **click here** for information about your specific privacy rights.*

This Privacy Notice describes the information that Vivint, Inc. and our subsidiaries and affiliates (together, "Vivint") collect, use, share, and store when you use the following Vivint products and services: the Vivint home security systems, security cameras, smart home devices, websites and mobile apps, sales and customer support, monitoring services, camera services, other subscription services, and other online and offline interactions. This Privacy Notice applies to information we collect about you in many contexts.

We may make updates or additions to this privacy notice, so we encourage you to review it periodically. These changes shall be communicated to you as per the process detailed in the "Changes to this Privacy Notice" section.

## Vivint Values Your Privacy

Vivint's commitment to providing security and peace of mind extends to how we handle the Personal Information of our customers and the public. Vivint builds and maintains consumer trust by protecting Personal Information including Sensitive Personal Information and Protected Health Information.

## Information We Collect

*We collect information that helps us contact you, provide our products and services to you and carry out certain business purposes described below. If we can use this information to identify you, we consider it personal information. This means that data that directly identifies you (like your name) and data that does not directly identify you, but that can reasonably be used to identify you (like the serial number of your device), is considered personal to you.*

The information we collect depends on the types of products and services you use. In general, the categories of information we may collect about you include:

**Identifiers**, such as your name, physical address, email address, telephone number, account name, and device identifiers.

**Customer records**, such as signature, physical characteristics or description, information about your home or property, and credit-related information (for example, the result of your credit pre-qualification or your FICO score). This information is only collected from customers.

**Protected class and demographic information**, such as age, sex, gender, disability, marital status, veteran status, race, and ethnicity.

**Commercial information**, such as information about purchases or quotes, information about subscriptions, products and services you have shown interest in, and other commercial information.

**Device information**, consisting of information from devices you connect to or use with Vivint products and services, including your mobile device, connected devices, and wired and wireless sensors. The information we receive from these devices may include IP address, unique device identifiers such as MAC address, sensor and activity information (for example, door open, motion detected, glass break sound detected, package detected near door, and person detected in camera's field of vision), battery status, and Wi-Fi network information. This also includes information about non-Vivint devices, utilities, and appliances used in your home (for example, use of a Google, Alexa, or MyQ device). This information is only collected from customers.

**Internet or other electronic network activity information**, such as browsing history, search history, website chat conversation transcripts, device and browser information, and information about your interactions with and use of our products, services, and social media.

**Geolocation data**, such as from devices you connect to or use with our products and services, including your mobile device, connected devices, and wired and wireless sensors, such as through the use of geolocation features in the devices (including FINE, COARSE, and BACKGROUND location), or by inference from

other information we collect (for example, your IP address may indicate the general geographic region from which you are connecting to the Internet and your Vivint system sensors may indicate you are at home).

**Audio, electronic, visual, or other sensory information**, such as photographs, footage, and sounds and noises captured by products and devices installed in or around your home or property. For example, the Vivint doorbell, outdoor, and indoor cameras capture photographs and footage. This information is only collected from customers.

**Professional or employment-related information**, such as your job title, employer, and income.

**Inferences** drawn from the information we collected about you to create profile about you reflecting your preferences. For example, we may infer your individual preferences based on what you view on our websites.

In addition, we also may collect sensitive information, including the following:

- Social Security number, driver's license number, or passport number.
- Account log-in, financial account (including whether you have financed your Vivint system through a Vivint lending partner), debit card, or credit card number in combination with any required security or access code, password, or credentials allowing access to an account.
- Precise geolocation (for example, your use of Vivint Car Guard may indicate the precise geolocation of your vehicle, and your use of Vivint sensors in your home may indicate the presence of people in the precise geolocation of your home or property).
- Racial or ethnic origin.

## Product Specific Information

*When you use our products and services, you trust us with your most personal information. Our home security systems, security cameras, and smart home devices and sensors collect certain sensor, technical and monitoring information. Depending on how you use these products and services, sometimes we collect this information continuously and for long periods of time. For this reason, we want you to understand what specific sensor, technical and monitoring information we collect from these products. The below sections contain a description of that information.*

Information Collected by the Vivint Smart Hub +

Information Collected by Vivint Security Sensors +

Information Collected by Vivint Safety Alarms +

Information Collected by Vivint Cameras +

Information Collected by Kwikset Smart Locks +

Information Collected by Vivint Smart Garage Door Opener +

Information Collected by Vivint Smart Thermostat +

Information Collected by Vivint Smart Lighting +

## Sources Of Information

*In addition to collecting information directly from you, we may receive personal information about you from other individuals, from the devices you use, through data collection technologies, our partners who work with us to provide our products and services, and from other lawful sources.*

We collect information about you from the following sources:

**Directly from you**. We collect information that you provide to us, such as when you create an account, make a purchase or request a quote, or contact us.

**Our products**. We collect information from our products, such as when you activate a product, use a product, when a product detects an event, or when you contact us through a product.

**Data collected automatically through tracking technologies**. We may automatically collect information or inferences about you through tracking technologies such as cookies and tools that track your usage of Vivint websites or the Vivint mobile app.

**Third parties**. We may collect information from other parties. For example, in some cases, devices and products from third parties may connect to our services and the third parties may send us information about the use of those devices, including sensor and activity data. We may also obtain information about you from service providers, business partners, public sources, social media companies, and other parties.

## How We Use Your Information

*We process the personal information described above for a variety of business and commercial purposes, including to power our services, to communicate with you, for security and fraud prevention, and to comply with law. We may also use your personal information for other purposes with your consent.*

The purposes for which we collect and use Personal Information depend on, among other things, our relationship or interaction with the specific users. The table below lists the purposes for which we collect and use Personal Information in different contexts.

**To provide and personalize our services,** such as processing or fulfilling orders and transactions, providing our products and services, processing payments, providing customer service, maintaining or servicing accounts, providing financing, verifying customer information, creating and maintaining business records, verifying eligibility for products or services, and undertaking or providing similar services.

**For internal research and development,** such as testing and verifying the quality of our products and services, improving the quality of our products and services, and creating new products and services.

**Communicating with you,** including through our service providers, such as responding to your questions and comments via telephone, email and website chat, confirming alerts and alarms received from your connected products, and notifying you of updates to our products and services.

**For legal, security, or safety reasons,** such as protecting our and our users' safety, property, or rights, complying with legal requirements, enforcing our terms, conditions, and policies, detecting, preventing, and responding to security incidents, and protecting against malicious, deceptive, fraudulent, or illegal activity.

**As part of a corporate transaction,** such as in connection with the sale of part or all of our assets or business, the acquisition of part or all another business or another business' assets, or another corporate transaction, including bankruptcy.

**For marketing,** such as sending information on our products and services or those of our affiliates, business partners, or other third parties. This may include using your information to send you in-app messages and notices, email, newsletters, surveys, promotions, or news about events. If you opt in to receive

marketing text messages from Vivint, we will only text you about the services described in the opt-in notice and will not share your opt-in with third parties for their own marketing purposes.

We may also use anonymized, de-identified, or aggregated information for the purposes permitted by law.

## How We Disclose Your Information

*We may disclose personal information described above with our affiliates and subsidiaries, service providers who act on our behalf, our business partners, third parties pursuant to legal purposes, or to others at your direction.*

We may disclose your information with the following third parties and in the following ways:

**Affiliates and subsidiaries.** We may disclose your information to the Vivint family of companies and any of our parent companies and their affiliates for their and our business purposes and for marketing purposes, including providing you with information about products and services we think may interest you. We may also combine your information with information about your smart home products and your insurance products to coordinate the functions of your Vivint smart home system with your insurance products.

**Service providers.** We may provide your information to our service providers to provide and improve our products and services, including for analytics purposes, hosting, product development, and to send or receive communications on Vivint's behalf.

**Business partners.** We may disclose your information to third parties that may use it for their own purposes, including companies that operate cookies and other advertising and marketing partners, insurance companies for risk management purposes and for your eligibility for insurance products and discounts, social media companies, and other business partners.

**For legal, security, or safety reasons.** We may disclose your information to law enforcement or other government authorities (including emergency responders) to comply with legal requirements or orders, to enforce our terms, conditions, and policies, and to protect our and our users' safety, property, or rights.

844.229.5938 (tel:+18442295938)

(/)

**As part of a corporate transaction.** We may disclose your information in connection with the sale of part or all of our assets or business, the acquisition of part or all of another business or another business' assets, or another corporate transaction, including bankruptcy.

**Entities to which you have consented to the disclosure.** We may disclose your information to third parties with your consent or at your direction, such as energy utilities to allow you to participate in energy savings programs.

## Cookies and Other Tracking Technologies

*Like many websites and applications, we and our service providers and business partners automatically collect certain information about you when you use and interact with our websites, social media accounts, mobile applications, and emails (collectively, "Online Services"). We collect this information using tools such as cookies, web beacons, pixels, tags, embedded scripts, session replay tools, SDKs, and other tracking technologies (collectively, "Tracking Technologies").*

The below descriptions will help you understand these Tracking Technologies so that you can make informed choices about them.

- **Cookies** are a type of technology that install a small amount of information on a user's computer or other device when they visit a website. Cookies permit a website to, for example, recognize you each time you visit the website visits using that computer or device.
- **Pixels, web beacons, and tags** are types of code or transparent graphics that contain a unique identifier. These technologies provide analytical information about the user experience and help us customize our marketing activities. In contrast to cookies, which are stored on a user's computer hard drive, these technologies are embedded invisibly on web pages.
- **Session replay tools** record your interactions with the Services, such as how you move throughout our Services and engage with our webforms. This information helps us identify and fix technical issues visitors may be having with the Services.
- **Embedded scripts and SDKs** are other types of code that we may use. They allow us to build and integrate custom experiences on our mobile applications and other online properties, some of which may be developed by a third party.

844.229.5938 (tel:+18442295938)

We use these Tracking Technologies to customize your visit, save your preferences, manage content, gather usage information, personalize marketing, and serve advertising (including targeted, interest-based advertising). For example:

Analytics +

Advertising +

Clickstream Data +

Location Services +

Cross-Device Matching +

Data Management Platform Services +

Push Notifications +

## Your Choices

*You have certain rights and choices with respect to your data. You may have additional rights depending on where you live and how those laws apply to you. If you are a California resident, please see our **California supplement** below. If you are a Virginia, Colorado, Utah, or Connecticut resident, please see our **supplement notice** for you below.*

While we maintain your information, you have the following choices:

**Account and Purchase Information.** You can update your account information through your account settings on our websites or apps or by contacting us as set out under "Contact Us" below. You can also update your purchase information by contacting us as set out under "Contact Us" below.

**Turning Off Location Information.** You can prevent your mobile device from sharing location information with us through your mobile device's operating system settings. However, you may not be able to fully use our products or services if you disable this sharing. Please note that even if you disable location sharing on your mobile device, we will continue to receive your IP address and use it as described above to, for example, determine your location.

**Disabling Push Notifications.** If you have permitted push notifications, our mobile application may send them to your mobile device. If you would like to disable push notifications, you can do so using your mobile device settings.

**Marketing communications.** You can unsubscribe from our promotional emails via the unsubscribe link provided in the emails. To opt out of receiving our direct mail promotional materials, please send us an email at **privacy@vivint.com**

(mailto:privacy@vivint.com). Please note that you will continue to receive administrative messages from us even if you opt out of receiving promotional messages.

**Personalized Ads.** Some of our advertising partners are members of the Network Advertising Initiative ("NAI") or the Digital Advertising Alliance ("DAA"). If you do not wish to receive our personalized interest-based ads, please visit the NAI at **https://optout.networkadvertising.org/?c=1 (https://optout.networkadvertising.org/?c=1)** or the DAA at **https://optout.aboutads.info/?c=2&lang=EN (https://optout.aboutads.info/?c=2&lang=EN)** to learn about your options for opting out of receiving personalized ads from member companies.

You may also be able to use browser settings to disable or delete cookies. You might have to repeat this process for each computer, device, or browser that you use.

Please note that if you disable cookies, you may not be able to use the full functionality of our websites.

## Data Retention and Security

We retain and store your information to provide services to you and for certain legal purposes. Even though we have implemented reasonable security to protect your information, we recommend that you still use caution when sending and receiving information from us.

We generally store your information on cloud servers operated by a third-party service provider until you delete or edit it, or for as long as you remain a Vivint customer. In addition, we may store your personal information to resolve disputes, establish legal defenses, conduct audits, pursue legitimate business purposes, enforce our agreements and comply with applicable laws.

We use a variety of administrative, technical, and physical controls to help protect your information. Unfortunately, even though we take measures to protect your information, no security measure can be 100% secure, and we cannot guarantee the security of your information. We recommend that you read this Privacy Notice carefully, contact us if you have any questions about our security, and take reasonable precautions to protect the information you send and receive from us. We also encourage you to take the following reasonable steps to protect your personal information against unauthorized disclosure or misuse. Ensure that your mobile

device's screen is secured with a strong password, PIN, swipe pattern, facial recognition, or fingerprint. Do not share your account credentials with anyone. If you receive a suspicious email or text claiming to be from us, don't respond or click any links. Set up account alerts and notifications for any changes to your account. Install antivirus and antispyware software on your computer. Update your software to ensure you're set up to address vulnerabilities that phishing scams and viruses exploit.

## International Users

Our products and services are intended only for individuals in the United States. If you are located outside of the United States and choose to use our products and services, you do so at your own risk. You understand that the information we collect about you will be transferred to the United States and other countries where we or our service providers and business partners are located. Please be aware that the laws in the United States may not be as protective as the laws in your country.

## Children's Information

Only individuals aged 18 and older are permitted to act as owners of Vivint products and services. Authorized users must be over the age of 13 (or the equivalent minimum age in the jurisdiction where they reside) and may use the products and services under the supervision of a parent or legal guardian.

Although we do not knowingly collect personal information online from children under the age of 13, if a child under the age of 13 has provided us with personal information online, we ask that a parent or guardian contact Vivint at **privacy@vivint.com (mailto:privacy@vivint.com)**.

## Third Party Links

Our websites and apps may contain links to third party websites or other online services that we do not own or control. This Privacy Notice does not apply to any third-party websites or online services that we do not own or control, even if you access them through our websites and apps. We are not responsible for the privacy practices of these websites or services. We encourage you to carefully review the privacy policies on these websites and services so that you will know how they collect, use, and share your information.

# Supplemental Information for California Residents



This section provides additional information for California residents whose information is subject to the California Consumer Privacy Act ("CCPA"). It does not apply to individuals who are not California residents.

Categories of Personal Information

The personal information we collect depends on your relationship with us and how you interact with our products and services. In the last 12 months, we have collected the following categories of information: (i) identifiers; (ii) customer records; (iii) protected class and demographic information; (iv) commercial information; (v) internet or other electronic network activity information; (vi) geolocation data; (vii) audio, electronic, visual, or other sensory information; (viii) professional or employment-related information; (ix) inferences; (x) device information; and (xi) sensitive information. The section in our Privacy Notice titled "Information We Collect" contains examples of the types of data that fall into each category.

Sources of Personal Information

In addition to collecting information directly from you, we may receive personal information about you from other individuals, from the devices you use, through data collection technologies, our partners who work with us to provide our products and services, and from other lawful sources. This Privacy Notice details the categories of sources in the "Sources of Information" section above.

Uses of Personal Information

We process the personal information described above for a variety of business and commercial purposes, including to provide and personalize our services, offer benefits and rewards, communicate with you, for research and development, for security and safety reasons, for legal purposes, for marketing, and as part of a corporate transaction. We may also use your personal information for other purposes with your consent. More details about these business and commercial purposes are listed in this Privacy Notice.

Disclosure of Personal Information

We disclose all the categories of personal information detailed in the chart below for business and commercial purposes detailed in the "How We Use Your Information" section above.

Although we have not "sold" personal information for money in the past 12 months, we engage in many standard business interactions with third parties that might be considered a "sale" or "sharing" of personal information as those concepts are defined by CCPA or CPRA. We do not knowingly sell or share personal information of minors under the age of 16.

| **Categories of Personal Information We Collect** | **Categories of Third Parties with Whom We Disclose Personal Information for a Business or Commercial Purpose** | **Categories of Third Parties to Whom Personal Information is Sold or Shared** |
| --- | --- | --- |
| **Identifiers** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Companies that operate cookies and other online tracking technologies |
| **Personal information subject to the California Customer Records Act** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Not sold or shared |

(/) 844.229.5938 (tel:+18442295938)

| | | |
|---|---|---|
| **Protected class and demographic information** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Companies that operate cookies and other online tracking technologies |
| **Commercial Information** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Companies that operate cookies and other online tracking technologies |
| **Internet or other electronic network activity** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Companies that operate cookies and other online tracking technologies |

(/) 844.229.5938 (tel:+18442295938)

| | | |
|---|---|---|
| **Geolocation data** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Companies that operate cookies and other online tracking technologies |
| **Audio, electronic, visual, or other sensory information** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Not sold or shared |
| **Professional or employment-related information** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Not sold or shared |

| | | |
|---|---|---|
| **Inferences** | • Affiliates and subsidiaries<br>• Service providers<br>• For legal, security, and safety purposes<br>• In connection with a corporate transaction<br>• Entities to which you have consented to the disclosure | Companies that operate cookies and other online tracking technologies |

Sensitive Information

We only use and disclose your sensitive information for the following purposes: (i) performing services or providing goods reasonably expected by an average consumer; (ii) detecting security incidents; (iii) resisting malicious, deceptive, or illegal actions; (iv) ensuring the physical safety of individuals; (v) for short-term, transient use, including non-personalized advertising; (vi) performing or providing internal business services; (vii) verifying or maintaining the quality or safety of a service or device; or (viii) purposes that do not infer characteristics about you. We do not use or disclose sensitive information for any other purpose.

Retention of Personal Information

Typically, we retain your personal information for the period necessary to fulfill the purposes outlined in this privacy notice, unless a longer retention period is required or permitted by law. Please note that in many situations we must retain all, or a portion, of your personal information to comply with our legal obligations, resolve disputes, enforce our agreements, to protect against fraudulent, deceptive, or illegal activity, or for another one of our business purpose Criteria we will use to determine how long we will retain your information include whether: we need your information to provide you with products or services you have requested; we continue to have a relationship with you; you have requested information, products, or services from us;

we have a legal right or obligation to continue to retain your information; we have an obligation to a third party that involves your information; our retention or recordkeeping policies and obligations dictate that we retain your information.



Rights Concerning Your Information

If you are a California resident, you may have the following rights concerning our collection, use, and disclosure of your personal information:

**Right to Know.** You have the right to request information about the categories of personal information we have collected about you, the categories of sources from which we collected the Personal Information, the purposes for collecting, selling, or sharing the Personal Information, and the categories of third parties with whom we have disclosed your Personal Information, and the specific pieces of Personal Information we have collected about you.

**Right to Delete.** You have the right to request that we delete Personal Information that we have collected from you.

**Right to Correct.** You have the right to request that we correct inaccurate Personal Information that we maintain about you.

**Right to Opt-Out of Sales or Sharing.** You have the right to opt-out of the sale or sharing of your Personal Information.

**Right to Limit Use and Disclosure of Sensitive Personal Information.** Under California Privacy Rights Act ('CPRA'), you have the right to request the limit of usage and sharing of your Sensitive Personal Information.

**Right of No Retaliation Following Opt-Out or Exercise of Other Rights.** You will not be discriminated against for exercising your rights under the California Consumer Privacy Act.

California residents may exercise the Right to Know, Right to Delete, and Right to Correct by submitting a request through this **link (https://www.requesteasy.com/6387-1256)**, emailing us at **privacy@vivint.com (mailto:privacy@vivint.com)** or by calling us at (800) 216-5232.

To exercise the Right to Opt-Out of Sales or Sharing with respect to any "sale" or "sharing" of personal information automatically collected online through cookies and other tracking technologies, you must do both of the following steps:

1. Submit a request through the "Do Not Sell or Share My Personal Information" link **here (https://www.requesteasy.com/6387-1256)**.
2. Disable the use of all cookies and other tracking technologies in the preference center.

We process Right to Opt Out of Sales or Sharing requests submitted through the preference center at the browser level. To fully opt out, you must disable the use of cookies and other tracking technologies through the preference center on each browser and each device you use to access our websites. Please be aware that if you block cookies, we will be unable to process requests sent through our preference center, and if you clear cookies, you will need to resubmit your request through the preference center.

You may use an authorized agent to submit a rights request on your behalf. To do so, your authorized agent must submit a request via email (to **privacy@vivint.com (mailto:privacy@vivint.com)**) and indicate that they are submitting the request as an agent. We may require the agent to provide proof that you gave signed permission to submit the request and may also require you to confirm with us that you provided the agent permission to submit the request or to verify your own identity directly with us.

We will take steps to verify your identity before completing your rights request. To do so, we may ask you to provide additional information, such as your name, home address, and email address. Depending on the nature of your request and our relationship with you, we may request different or additional information, including a signed declaration that you are who you claim to be.

Shine the Light

California's "Shine the Light" law (Civil Code Section § 1798.83) permits users of our website that are California residents to request certain information regarding our disclosure of personal information to third parties for their direct marketing purposes. If you are a California resident and would like to submit such a request, please submit your request in writing to us using the contact information provided below and include the subject line "CA Shine the Light Request".

## Rights for Residents of Virginia, Colorado, Utah, and Connecticut

If you are a resident of Virginia, Colorado, Utah, or Connecticut, you may have the following rights:

**Right to Know, Access or Confirm:** You may have the right to confirm whether we process your Personal Information and to access such data.

**Right to Correction or Rectification:** You may have the right to correct inaccuracies in your Personal Information.

**Right to Deletion:** You may have the right to delete your Personal Information that we have obtained.

**Right to Data Portability:** You may have the right to receive a copy of your Personal Information in a portable and readily usable format.

**Right to Opt-out of Processing:** You may have the right to opt out of the processing of your information for purposes of (i) targeted advertising, (ii), the sale of your information; or (iii) profiling in furtherance of decisions that produce legal or similarly significant effect concerning you.

To exercise these rights, please contact us at **privacy@vivint.com (mailto:privacy@vivint.com)** or submit a request through the "Do Not Sell or Share My Personal Information" link **here (https://www.requesteasy.com/6387-1256)**.

You will not be discriminated against for exercising your rights under the Utah Consumer Privacy Act (UCPA)

As with the CCPA and CPA, the Connecticut Data Privacy Act (‘CTDPA) also grants consumers the ability to designate another person as an authorized agent to exercise the right to opt-out on their behalf.

If you disagree with a decision of Vivint regarding your rights, you may appeal that decision by emailing **privacy@vivint.com (mailto:privacy@vivint.com)** or by submitting a request through this **link (https://www.requesteasy.com/6387-1256)**.

## Rights for Residents of Nevada

If you are a Nevada resident, you have the right to opt out of the sale of certain personal information, including your name and mailing address, to third parties.

## Changes to this Privacy Notice

We may make changes to this Privacy Notice from time to time. If we do, we will update the "Last Updated" field at the top of this Privacy Notice. We encourage you to review it periodically.

When we make material changes to this Policy, we'll provide you with prominent notice as appropriate under the circumstances. If the changes materially alter your rights or obligations under this Privacy Notice, we will make reasonable efforts to notify you of the change. For example, we may send a message to your email address, if we have one on file, or generate a pop-up or similar notification when you access our products or services for the first time after such material changes are made.

## Contact Us

If you have any questions about your information, this Privacy Notice, or our privacy practices, or if you would like to exercise certain choices and rights described in this Privacy Notice, please contact us at **privacy@vivint.com (mailto:privacy@vivint.com)** or by submitting a request through this **link (https://www.requesteasy.com/6387-1256)**.

## Exclusions

This Notice does not apply to the following:

- Information about our employees, contractors, agents, and job applicants.
- Information about individuals collected in the context of business-to-business communications and transactions, such as information about employees of our business partners and customers.
- Information that we handle on behalf of our business customers. We act as a processor regarding this information. As such, please see their applicable privacy notice for more information.
- Information that we collect in the context of providing financial services, such as loan brokering. Please review our **GLBA Notice (/legal/glba-privacy-notice)** for more information.
- Information we collect in the context of providing insurance-related products and services. Please review our **Insurance Privacy Notice (/legal/insurance-information-practices)** for more information.

## Third-Party Links

(2) 844.229.5938 (tel:+18442295938)

Our websites and apps may contain links to third-party websites or other online services that we do not own or control. This Privacy Notice does not apply to any third-party websites or online services that we do not own or control, even if you access them through our websites and apps. We are not responsible for the privacy practices of these websites or services. We encourage you to carefully review the privacy policies on these websites and services so that you will know how they collect, use, and share your information.

**Customer Support (https://support.vivint.com/s/)**

**Licenses (https://www.vivint.com/legal/licenses)**

**Privacy Policy (https://www.vivint.com/legal/privacy-policy)**

**Terms of Service (https://www.vivint.com/legal/terms-of-use)**

Copyright © 2024 Vivint, Inc. All rights reserved.
Do not sell or share my personal information. (https://www.requesteasy.com/6387-1256) Limit the use of my sensitive personal information. (https://www.requesteasy.com/6387-1256)

# EXHIBIT C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 24-3081-GW-KSx | Date | August 5, 2024 |
| Title | *Dana Hughes v. Vivint, Inc., et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Robert Tauler | Liam E. Felsen<br>Darrell C. Robinson |

**PROCEEDINGS: DEFENDANT VIVINT, INC.'S MOTION TO DISMISS [11]**

The Court's Tentative Ruling on Defendant's Motion [11] was issued on July 12, 2024 [18]. Oral argument is held. The Tentative Ruling is adopted as the Court's Final Ruling. Defendant's Motion is GRANTED without prejudice. Plaintiff will have until August 19, 2024 to file a First Amended Complaint. Statutory time to respond.

: 07

Initials of Preparer JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 24-3081-GW-KSx | Date | July 12, 2024 |
| Title | *Dana Hughes v. Vivint, Inc., et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON DEFENDANT VIVINT, INC.'S MOTION TO DISMISS [11]**

Attached is the Court's Tentative Ruling on Defendant's Motion [11] set for hearing on July 15, 2024 at 8:30 a.m.

: 

Initials of Preparer JG

***Dana Hughes v. Vivint, Inc., et al.***; Case No. 2:24-cv-03081-GW-(KSx)
Tentative Ruling on Motion to Dismiss

## I. Background[1]

On March 12, 2024, Plaintiff Dana Hughes ("Plaintiff" or "Hughes") brought a putative class action suit against Defendant Vivint, Inc. and Does 1-25 ("Defendant" or "Vivint") in Los Angeles County Superior Court asserting one cause of action for violation of California's Trap and Trace Law, *see* Cal. Penal Code § 638.51, under the California Invasion of Privacy Act ("CIPA"). *See generally* Complaint ("Compl."), Docket No. 1-1. Plaintiff seeks, *inter alia*, injunctive relief, statutory damages, punitive damages, and attorneys' fees and costs. *See id.* Defendant removed the action to this Court on April 15, 2024, based on the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d). *See* Docket No. 1.

Plaintiff alleges that she is a citizen of California residing in Los Angeles County. *See* Compl. ¶ 6. Defendant is a Utah retailer that sells home security systems. *See id.* ¶ 10.[2] Defendant operates the website https://www.vivint.com (the "Website"). *See id.* Plaintiff alleges that Defendant installed on its Website software created by TikTok that is used to identify website visitors (the "TikTok Software"). *See id.* According to Plaintiff, the TikTok Software acts via a process known as "fingerprinting" in which "the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." *Id.* ¶ 11. The TikTok Software "gathers device and browser information, geographic information, referral tracking, and url tracking." *Id.* ¶ 12. Defendant also runs an "Advanced Matching" function of the TikTok Software that "will scan your website for recognizable form fields containing customer information, like email and phone . . . ." *See id.* ¶¶ 13-14. Plaintiff alleges that when a user visits the Website, the TikTok Software automatically runs and sends information to TikTok to match the user with TikTok's fingerprint of them. *See id.* ¶ 15. As the process is automatic, website visitors are not informed and cannot consent to the tracking of their web activity. *See id.* ¶ 16. Further, Defendant does not attempt to obtain consent and does not provide a way to opt out of the data collection. *See id.*

[1] The facts in this section are derived from Plaintiff's Complaint, Docket No. 1-1, unless otherwise indicated.

[2] Plaintiff's Complaint asserts Defendant is a New Jersey citizen. Defendant's notice of removal states that it is actually a Utah citizen.

Under California law, "'[t]rap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). Plaintiff contends the TikTok Software is a trap and trace device because "the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website." Compl. ¶ 34. CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without consent or a court order. *See id.* ¶ 22. *See also* Cal. Penal Code § 638.51. Plaintiff seeks to certify a class of "[a]ll persons within California who within the statute of limitations period whose information was sent to TikTok by the Website through the TikTok Software." Compl. ¶ 24.

Now before the Court is Defendant's motion to dismiss ("Mot."). *See* Docket No. 11. Plaintiff filed an opposition, *see* Docket No. 13, and Defendant filed a reply, *see* Docket No. 14.

## II. <u>Legal Standard</u>

### A. <u>Motion to Dismiss</u>

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to

judicial notice." *Swartz*, 476 F.3d at 763; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "On a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).

B. Standing

The "irreducible constitutional minimum" of standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."). The plaintiff bears the burden of establishing these elements, and "at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 578 U.S. at 339 (cleaned up). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. (internal quotation marks omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*. (internal quotation marks omitted). A concrete injury "must actually exist," and be "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). Concrete injuries can be both tangible and intangible. *See id*. With respect to the concrete-harm

requirement, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Or put differently, "[t]hat inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. The role of Congress or legislatures in identifying intangible harms may be instructive, but violation of a statutory right does not automatically satisfy the injury-in-fact requirement because "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427.

**III. <u>Discussion</u>**

Defendant moves to dismiss the Complaint arguing it is procedurally and substantively deficient. *See* Mot. at 1. Defendant claims that Plaintiff: (1) has not alleged concrete harm sufficient to satisfy Article III standing, (2) fails to allege facts establishing personal jurisdiction over Vivint, (3) fails to state a claim for relief under CIPA; and (4) has plead a Complaint that is impermissibly vague. *See id*. As Article III standing is a prerequisite to this Court's subject matter jurisdiction, the Court will first address the issue of Plaintiff's standing.

Defendant claims that Plaintiff cannot satisfy the concrete injury requirement of standing because she "fails to allege *any* harm – physical, economic, or otherwise – resulting from her use of the Vivint website." Mot. at 4. Rather, Plaintiff offers only conclusory allegations regarding Defendant's use of the TikTok Software, and such bald allegations of statutory violations are insufficient to confer standing. *See id*. Further, Defendant argues that Plaintiff does not identify any specific information that could implicate any harm to her privacy by the alleged conduct. *See id*. Moreover, Defendant argues that Plaintiff consented to the alleged conduct as the Website clearly displays a link to its Privacy Notice, which informs users of the use of tracking technologies, and regardless of whether Hughes read the notice, she impliedly consented. *See id*.

Plaintiff first responds with a series of procedural arguments. Plaintiff claims that she filed this case in state court, and Defendant removed it to federal court before moving to dismiss for lack of Article III standing. *See* Opp. at 4. Plaintiff argues this type of tactic is disfavored, and this case should be remanded if no standing is found. *See id*. Further, Plaintiff states that standing was never discussed at the parties' meet and confer before removal. *See id*. at 5. As to the

substance, Plaintiff contends she does have Article III standing. *See id*. Plaintiff cites to Ninth Circuit case law for the proposition that intrusions into privacy constitute an injury in fact because an individual's right to privacy encompasses control of information concerning her person, and a violation of the right falls into a category of traditionally recognized harm. *See id*. Plaintiff claims an injury from invasion of her privacy because Defendant collected Plaintiff's phone number, email, address, and routing information. *See id*. Defendant replies that Plaintiff remains silent as to any concrete harm purportedly suffered or alleged. *See* Reply at 4. Pointing to the portion of the Complaint cited by Plaintiff to demonstrate harm, Defendant contends that the paragraph only conclusively asserts Defendant employs a trap and trace process that identifies the source of incoming communications to the website. *See id*. Defendant argues that "[n]owhere in this paragraph does Plaintiff assert that she – or anyone else – was harmed by the alleged trap and trace process." *Id*.

At this time, the Court would find that Plaintiff has not sufficiently established Article III standing. The parties' dispute centers on whether Plaintiff has suffered an injury in fact that is concrete and particularized. Plaintiff's Complaint is vague as to many, if not all, of the details surrounding her use of the Website and what specific information was captured by the TikTok Software. Plaintiff does not allege any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit. As a result, Plaintiff fails to clearly allege facts establishing an injury in fact. For instance, in describing her alleged injury from invasion of privacy, Plaintiff claims that "Defendant collected Plaintiff's phone number, email address and routing information," citing to paragraph 34 of the Complaint. Opp. at 5. However, as Defendant points out, paragraph 34 of the Complaint only states:

> Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website.

Compl. ¶ 34. Such a paragraph, even accepted as true and construed in Plaintiff's favor, does not sufficiently explain what information of Plaintiff's was captured, only what information could be captured. For instance, Plaintiff claims that her email address and phone number were captured by Defendant. However, Plaintiff never alleges in her Complaint that she entered her email address or phone number into any fields on the Website so that the Advanced Matching feature of the

TikTok Software could capture her personalized information. Plaintiff's claim that such information was collected is unsupported by the facts of the Complaint. However, Plaintiff does allege that her routing information was collected. In the Complaint, Plaintiff states that the TikTok Software "gathers device and browser information, geographic information, referral tracking, and url tracking." Compl. ¶ 12. But, in claiming that only her routing information was collected by Defendant, Plaintiff does not specify what that routing information is, and whether that differs from addressing and other signaling information she does not contend was collected.

Plaintiff accurately quotes the Ninth Circuit for the proposition that "a right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (cleaned up). In that case, the Ninth Circuit goes even further to state "violations of the right to privacy have long been actionable at common law," and CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *Id.* (cleaned up). However, Plaintiff's argument here is belied by the vagueness of her pleading. As the right to privacy encompasses control of information concerning one's person, courts "make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (internal quotation marks omitted).

In *In re Facebook*, the Ninth Circuit found the plaintiffs had "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information" because "Facebook's tracking practices allow it to amass a great degree of personalized information," such as "an individual's likes, dislikes, interests, and habits over a significant amount of time." *In re Facebook*, 956 F.3d at 599. In contrast, other courts have found the collection of other, less personalized information to not implicate privacy concerns. *See I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (finding collection of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" to be insufficiently concrete to confer standing as there is "an insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion"); *Lightoller v. Jetblue Airways Corp.*, No. 3:23-cv-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding "Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close

relationship to the right to control personal information" when alleging "that while visiting Defendant's website, her communications were monitored, recorded, and collected" and Defendant could "intercept and record a website visitor's electronic communications, including her mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time") (internal quotation marks omitted). Plaintiff does not sufficiently explain what routing information was collected, and whether that routing information is of such a kind that it implicates a protectable privacy interest.

As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (granting motion to dismiss because "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest. Accordingly, Plaintiff's allegation is insufficient to allege a concrete harm that is required for Article III standing"); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (granting motion to dismiss for lack of standing as "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy").

Even if Plaintiff was more specific in alleging what information of hers was collected by the TikTok Software, her arguments regarding the harm associated with her invasion of privacy would still be flawed. While Defendant claims that no harm has been asserted by Plaintiff as a result of the trap and trace process, the Court would construe Plaintiff as alleging the harm to be collection of otherwise anonymous information that is used by TikTok to identify Plaintiff through the "fingerprinting" process. *See* Comp. ¶ 11. In essence, the harm Plaintiff claims is having otherwise anonymous data be identified to her through the TikTok Software. This type of identifying-based harm would track with the section of the penal code that Plaintiff brings suit under concerning trap and trace devices. However, Plaintiff fails to allege that she has a TikTok account that would allow Defendant's collection of her anonymous information from visiting the Website to be associated with her and identify her. If Plaintiff does not have a TikTok account, then the fingerprinting process would not produce any match, meaning Plaintiff's identity would

not be connected with the anonymous information, and seemingly no harm would have occurred.

In sum, the Court would not find that Plaintiff has shown the necessary elements to establish her standing to bring suit. As Plaintiff has not established clearly alleged facts to demonstrate injury in fact, but potentially could with greater detail, the Court would dismiss this case, but with leave to amend.[3]

**IV. Conclusion**

For the foregoing reasons, the Court would **GRANT** Defendant's motion to dismiss without prejudice. Further, the Court would **GRANT** Plaintiff leave to amend within three weeks of the entry of this Order.

[3] As the Court would not find Plaintiff has proven standing to bring this action, the Court need not decide Defendant's other arguments concerning personal jurisdiction and the merits of Plaintiff's claims. Plaintiff would be wise to keep those arguments in mind if she chooses to file an amended complaint.

## CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action. My business address is Frost Brown Todd LLP, 633 W. Fifth Street, Suite 900, Los Angeles, CA 90071.

On September 3, 2024, I served the following document(s) on the interested parties in this action: **VIVINT, INC.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

☐ by placing the original and/or a true copy enclosed in (a) sealed envelope(s), addressed as follows:

| | |
|---|---|
| Robert Tauler<br>TAULER SMITH LLP<br>626 Wilshire Boulevard, Suite 550<br>Los Angeles, CA 90017 | Attorney for Plaintiff:<br>Dana Hughes<br><br>Phone: (213) 927-9270<br>Email: robert@taulersmith.com |

☒ **BY CM/ECF SYSTEM:** Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

☐ **BY REGULAR MAIL:** I placed such envelope with postage fully paid in the United States mail at Los Angeles, California. I am "readily familiar" with this firm's practice of collecting and processing correspondence for mailing. It is deposited with U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **BY ELECTRONIC SERVICE:** I caused the document(s) to be sent to the persons at the electronic notification address listed in the Service List.

☒ (Federal) I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on September 3, 2024, at Los Angeles, California.

/s/ *Julia Evans*

Julia Evans

0145544.0782478 4879-7504-1728v1

FROST BROWN TODD LLP
LOS ANGELES